JAMES A. SHEDD *v.* TROY AND BOSTON RAILROAD COMPANY.

*Railroad Ticket. Effect of Condition on Same.*

The condition—" *Good for this day and train only,*" upon a railroad passenger ticket,—*held*, under the circumstances of this case, to justify a railroad company in refusing to carry a passenger on such ticket after the expiration of the time limited by such condition.

" THIS was an action of assumpsit for the breach of a contract to " carry the plaintiff as a passenger. The case came into the county " court on an appeal from the judgment of the recorder of the city of " Burlington, rendered on the 13th day of August, A. D. 1866. The " declaration contained counts declaring upon a contract to carry the " plaintiff from Rutland, in this state, to Troy, in the state of New " York ; also upon a contract to carry the plaintiff from Boston. " in the state of Massachusetts, to said Troy. The parties agreed " upon the following statement of facts : The plaintiff, before and at " the time of the injury complained of, was a merchant and trader, " residing and doing business in the city of Burlington, in the State " of Vermont, and for a number of years had been in the habit of " frequently passing, in the transaction of business, from said Bur- " lington to Boston, in the state of Massachusetts, and New York " City, Troy and Albany, in the state of New York, and divers other " places between said places. The defendant, before and since the " time of the injuries complained of, was a corporation incorporated " and organized under the authority of the laws of the state of New " York, and was then running and operating the railroad extending " from Rutland, in this state, *via* Bennington, in this state, to Troy, " in the state of New York, and being the railroads of the Western " Vermont Railroad Company, in the state of Vermont, and the " Troy & Boston Railroad Company, and said roads were so run by " the defendant, in connection with the Rutland & Burlington and " Cheshire & Fitchburg Railroads, so as to form a continuous or " through passenger line or railroad route between Troy and Boston, " and that the fares of passengers over this through line were divided, " *pro rata*, between the companies owning or running the different " railroads of which the route or line was made up, according to the " distance run on each railroad respectively ; and that this arrange- " ment had existed for some time before that date, and continued " until after that time, and until January, 1867. The same train, " by which passenger. for this route came to Rutland, went on from " Rutland to Burlington on the same day, and the passengers for " Troy changed cars at Rutland. On the 13th day of March, A. D. " 1866, the plaintiff was in Boston, Mass., in and about his business ; " and on said day he went to the depot of the Fitchburg railroad, " and at the passenger ticket office called for and purchased a ticket

Shedd *v.* T. & B. R. R. Co.

"from Boston to Troy over the railroad passenger route aforesaid, "and paid for said ticket the sum of six dollars. The ticket was "in the form following:

| CHESHIRE RAILROAD. | |
|---|---|
| **GOOD FOR ONE FIRST CLASS PASSAGE.** | |
| **B O S T O N   T O   T R O Y .** | |
| Via F. C., R. & B., W. V. and T. & B. Railroads. | |
| ☞ This Ticket is not good unless each check is officially stamped and dated. The checks belonging to this ticket will not be received for passage if detached. | |
| GOOD FOR THIS DAY AND TRAIN ONLY. | |
| 1.508   2.081 | R. STEWART, Superintendent. |

(ISSUED BY THE — COMPANY.)

"And annexed to such ticket were coupon checks, one for each "road composing said passenger route from Boston to Troy. Said "ticket, and each of the coupon checks attached, were officially "stamped and dated the day said ticket was purchased, viz: "1866, "March 13th." The plaintiff, at the time of the purchase of said "ticket, did not examine the same, and was not aware of the con- "tents of said ticket and coupons until the time of the injuries com- "plained of, on the 14th day of April, A. D. 1866. The plaintiff, "at the time of the purchase of said ticket, intended to leave Boston "on the train which left about four hours after such purchase on said "13th day of March, 1866, to go home to Burlington, via Rutland, "but he was detained by business until the 14th day of March, "1866, when he left Boston to go home, and came over the said "passenger route as far as Rutland, the several conductors upon said "route having detached from said ticket and retained the coupon "checks for a passage over their respective roads from Boston to "Rutland, and went directly home from Rutland in the same train "in which he had come from Boston. On the 14th day of April, "A. D. 1866, the plaintiff, in the prosecution of his business, was "in the southeasterly part of Rutland county, and for the purpose of "going to said Troy, went to the Wallingford station, on the said "Western Vermont Railroad, and took a seat in one of the cars of "a regular passenger train, run by the defendant over said Western "Vermont and Troy & Boston Railroads. During the year 1866 "the defendant was running the Western Vermont Railroad, under a

7

Shedd *v.* T. & B. R. R. Co.

" lease of the same, in connection with its own road, and run pas-
" senger trains daily over said two last named railroads from Rutland
" to Troy, in a car of one of which the plaintiff took his seat.
" After the train left the Wallingford station aforesaid, the defend-
" ant, by its conductor of said train, who was acting by and under
" the authority of the defendant, called upon the plaintiff for his
" passenger ticket; and the plaintiff gave to him the ticket, unmuti-
" lated and in good condition, which he had purchased, as aforesaid,
" in Boston, except the coupon checks for passage which had been
" detached, as aforesaid, on the plaintiff's passage from Boston to
" Rutland, on the said 14th day of March, A. D. 1866. The
" defendant refused to take said ticket, and claimed that the ticket
" was out of date, and good only for the day of its date and for the
" train of that day, and that the plaintiff could not use or ride upon
" that ticket, as it was good for nothing, and that he had instructions
" from the defendant not to take such tickets. The plaintiff refused
" to pay his fare in any other way than with said ticket, and at the
" South Wallingford station, being the first one south of Wallingford
" station, the defendant compelled the plaintiff to leave the train,
" and refused to carry him to Troy. The ticket, aforesaid, had never
" been used over said road from Rutland to Troy, of which said con-
" ductor was informed, and had never been offered for use, and the
" plaintiff had never noticed the conditions upon said ticket until his
" attention was called thereto by the said conductor, and had never
" made any inquiries as to the regulations or conditions upon which
" such tickets were issued. In March, 1866, and when said ticket
" was purchased, and for several years before, the fare from Boston
" to Rutland was $6.25, and from Rutland to Troy it was $3.50 by
" the route above mentioned. From Rutland to Burlington $2.80,
" and from Boston to Burlington, via Rutland & Burlington Rail-
" road, $8.00. The distance from Boston to Rutland by said route
" was one hundred and seventy miles; from Rutland to Burlington
" sixty-seven miles; from Rutland to Troy, via defendant's route,
" eighty-four miles. The reason why the defendant sold through
" tickets from Boston to Troy for $6.00, while the fares by the same
" route was $6.25 from Boston to Rutland, and $3.50 from thence
" to Troy, was on account of the serious competition for passengers
" between Boston and Troy with other routes; and the companies
" composing said line, had made and agreed to the regulation speci-
" fied in said ticket for the purpose of preventing the use of such
" through tickets for any other purpose than that of one continual
" passage from Boston to Troy. The defendant never made a tender
" to the plaintiff of nor offered to him any portion of the money paid
" for said ticket, nor offered to said plaintiff to rescind the contract
" to carry him from Boston to Troy.

" The plaintiff was not aware of what the above named fares
" were, but knew the price of a through ticket from Boston to Troy
" was less than a ticket from Boston to Rutland, and one from Rut-

" land to Troy purchased separately, and at the time of the purchase " of said ticket intended to go to Troy·in a short time thereafter."

The case was heard upon the foregoing statement at the September Term, 1867, PIERPOINT, Ch. J., presiding. The court, *pro forma*, rendered judgment for the defendant,—to which decision the plaintiff excepted.

*Wales & Taft*, for the plaintiff.

A common carrier cannot limit his common law liability, except by express contract, although the notice intending to ·limit it, is brought home ·to the party. This principle is well settled, and is the language of the text-books and many well adjudged cases. *Farmers and Mechanics' Bank* v. *Champ. Trans. Co.*, 23 Vt. 207 ; *Derwort et ux.* v. *Loomer*, 21 Conn. 249 ; *Dorr et al.* v. *The N. J. Steam Nav. Co.*, 1 Kernan, 485 ; 3 Hill, 9 ; *Hollister* v. *Nowlen*, 19 Wend. 234 ; *Clark* v. *Faxon*, 21 Wend. 153 ; *Camden Co.* v. *Belknap*, 21 Wend. 353.

And in those states where it is held that he *may*, by notice, limit his liability, it is also held that the notice must be unequivocal, and the person fully informed of the terms and effect of it. *Cam. and Amb. R. R. Co.* v. *Baldauf*, 16 Penn. 68 ; *Brown* v. *Eastern R. R. Co.*, 11 Cush. 97.

Placing the phrase " *Good for this day and train only* " upon their ticket is a *direct* limitation of their common law liability, a liability on their part arising from the payment of the passage money, evidenced by the delivery of the ticket and coupons, to transport the purchaser of the ticket from and to the places indicated, unless it can be said that, independent of the common law, a party upon the purchase of a simple ticket, is obliged to start upon his journey the same day and go through in one train.

This idea is negatived by placing the limiting phrase upon the ticket ; of what use is it, if that is already the law ?

A party upon the purchase of a ticket has a right to use it·at any time within the statute of limitations (*Brooke* v. *Grand Tr. R'y*, 15 Mich. 332,) or at least within a reasonable time. 2 Redfield on Railways, 219, § 5.

Shedd *v.* T. & B. R. R. Co.

The case shows that the defendant did not call the attention of the plaintiff to the contents of the ticket until he was put off the train.

Neither can it be said *in this case*, that after the plaintiff had commenced the performance of his journey, that he was obliged, by the obligations imposed upon him, to finish it at once, and to go through to the end of the route without stopping : for the contract, instead of being an entire one for the whole distance, was a separate contract with each road, and the case shows that the plaintiff had never used the same upon any part of the line run by the Troy and Boston Co. *Sprague* v. *Smith*, 29 Vt. 426 ; 2 Redfield on Railways, 227 ; *Ellsworth* v. *Tartt*, 26 Alabama, 733 ; *Straiton* v. *The N. Y. & N. H. R. R. Co.*, 2 E. D. Smith, 184 ; *Brooke* v. *Grand Trunk Railway*, 15 Mich. 332 ; *Hood* v. *N. Y. and N. H. R. R. Co.*, 22 Conn. 1.

The ticket by the terms expressed on the same, would require the defendant to have left Boston on the train of the 13th March, 1866, but the plaintiff not leaving until the day after, and no objection being made at the time, the phrase : " *Good for this day only*," &c., even if binding in and of itself, was expressly waived, and the parties placed in the same position they would have been in had the phrase not been on the ticket.

A by-law or regulation of this kind cannot be waived in part and insisted upon in part, and the defendant certainly had a right to waive it. 2. Redf. on Railways, 232.

*W. C. Dunton* and *E. J. Phelps*, for the defendant.

1. Tickets for passage over successive railroads are contracts between their holders and the railroad companies ; and the terms of such tickets, as expressed by the language upon them, are equally binding upon both parties. 2 Redfield on Railways, 227 ; Angell on Carriers, 550 ; *Cheney* v. *Boston and Maine Railroad Co.*, 11 Met. 121 ; 1 American Railway Cases, 601 ; *Boston and Lowell Railroad Co.* v. *Proctor*, 1 Allen, 268.

There is also an implied contract that the holders of such tickets are to be carried in the same manner in which passengers holding similar tickets are usually carried. Ignorance of the rules and regulations of the company upon the part of passengers, does not affect the liability of the company.

2. The contract must be enforced as the parties made it, and neither party can set it aside or add new terms to it. *B. & L. R. R. Co.* v. *Proctor, supra.*

3. The defendants were not bound to make arrangements by which passengers could purchase through tickets from Boston to Troy, but if they did so, they alone had the right to fix the terms. *B. & L. R. R. Co.* v. *Proctor, supra.*

4. A passenger who buys a ticket entitling him to a through passage at a *reduced price*, cannot require a railroad company to carry him from an intermediate point, where he chooses to stop for several days. 1 Parsons on Con. p. 719 ; 1 Redfield on Railways, 99 to 101.

The passenger chooses to take the ticket subject to the condition : " *Good for this day and train only*," rather than to pay way fare, and cannot complain if the railroad company insist upon a compliance with its terms.

The opinion of the court was delivered by

Barrett, J. A month after the purchase of the ticket by the plaintiff and his ride on the credit of it from Boston to Rutland, on his journey to Burlington, he claimed the right to go from Wallingford to Troy on the same ticket and unused coupons. This was denied to him ; and hence this suit. Had he the right claimed ?

His contract was consummated by the purchase of the ticket. That was the only transaction between the parties from which the plaintiff's right accrued. He knew that he got a through ticket for a less sum than he should have to pay for a ticket to Rutland, and for one thence to Troy. Of course he knew, or had reason to know, that there was some reason why through passage was a matter of interest to the railroads concerned, and that there was some arrangement between them, under which through tickets would be sold for a less sum than separate tickets for the same distance.

The ticket itself notified him of the character of the passage that such arrangement provided. He had ample opportunity to enquire and know under what regulations he could have and use his through ticket. If it should not be to his liking, he could refrain from buying. When handed to him on his calling for it, he could have seen its contents if he had chosen to look. There was no concealment

nor deceptive practice. After he had got it, he had ample time, before starting on his journey under it, for examining it, and if he did not like the terms, he could have offered it back for that reason, and, without doubt, would have got his money, or a ticket for Rutland or Burlington at the customary rates.

The case stands then on the single question, whether the railroad companies, *as matter of law*, were precluded from making such arrangements with each other as they did in this case, in virtue of which the defendant company could lawfully refuse to carry the plaintiff on that ticket from Wallingford to Troy? On this question we have no doubt; but do not propose now "to grapple with the subject," as suggested by Judge REDFIELD in his book on Railways, further than to decide the very case presented upon its special facts. We hold that the plaintiff is not entitled to recover, and the judgment is affirmed.