# CHARLESTON.

## HALSTEAD *v.* HORTON.

Submitted January 20, 1894.—Decided January 27, 1894.

| | |
|---|---|
| 38 | 727 |
| 39 | 420 |
| 58 | 727 |
| 41 | 451 |
| 38 | 727 |
| 42 | 235 |
| 38 | 727 |
| 43 | 771 |
| 38 | 727 |
| 58 | 181 |
| 38 | 727 |
| 60 | 581 |
| 60 | 675 |
| 38 | 727 |
| 65 | 442 |

1. NEW TRIAL.

A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules : (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative ; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.

2. CONTINUANCE— REVERSAL OF JUDGMENT—DISCRETION OF THE COURT.

A motion to postpone until another day the submission of the case to the jury is addressed to the sound discretion of the trial court under all the circumstances, and the appellate court will not reverse a judgment on the ground of a refusal to postpone, unless such refusal plainly appears to have been an abuse of such discretion.

3. NEW TRIAL—BILL OF EXCEPTIONS.

Where a party intends to review in the appellate court the action of the trial-court in rejecting or admitting evidence, he must make such ruling the subject-matter of a formal bill of exceptions, or he must in some way distinctly and specifically make such ruling a ground of his motion for a new trial.

4. A case in which these rules are applied.

J. W. ARBUCKLE for plaintiff in error cited 12 Gratt 576 ; 22 W. Va. 254 ; 27 W. Va. 32 ; Id. 511 ; 37 W. Va. 778 ; 34 W. Va. 38, 41 ; 82 Va. 712 ; Id. 827 ; 37 W. Va. 744 ; 23 W. Va. 229 ; 37 W. Va. 306 ; Id. 813 ; 31 W. Va. 428 ; 32 W. Va. 487 ; 60 Am. Dec. 630.

HOLT, JUDGE:

This is an action of trespass on the case, brought in the Circuit Court of Greenbrier county on the 29th day of February, 1892, by the plaintiff, Mrs. Virginia Halstead, against defendant, John D. Horton, under section 20 of chapter 32 of the Code, (see Ed. 1891, p. 236) averring that she was injured in property and means of support in consequence of the intoxication of her husband, John J. Halstead, caused by defendant, on the 27th day of November, 1891, at the town of Ronceverte, by said defendant then and there unlawfully selling and giving him intoxicating liquors, whereby, among other things, defendant caused her husband to lose, squander, and waste the sum of six hundred dollars, her sole and separate property, then in her husband's possession, laying her damages at five thousand dollars.

The case was tried by a jury on the plea of not guilty, and on the 15th of July, 1892, the jury returned a verdict for defendant. Thereupon the plaintiff moved the court to set aside the verdict and grant her a new trial, because the same was contrary to the law and the evidence; also on the ground of newly discovered evidence, and because the defendant procured the verdict by false evidence, and a fraud upon the jury; but the court overruled the motion, and gave judgment for the defendant; and plaintiff obtained a writ of error.

All the evidence is certified. No instruction was asked by either party and none was given.

During the progress of the trial, after plaintiff had introduced her evidence in chief, and defendant had closed his evidence, plaintiff called John G. Tobin, who stated: "I know John D. Horton. I have seen John J. Halstead." Witness was then asked by plaintiff: "Did you see John J. Halstead, and examine him at the time he was robbed in Ronceverte? If so, did he have any money?" Question objected to by counsel for defendant. Objection sustained, and plaintiff excepted. Plaintiff, by her counsel, then moved the court to continue the case until next morning (it being about 5 o'clock P. M.) that plaintiff might get an important witness (John F. Bowes) stating he had been regularly summoned, and had gone to Caldwell, about four

miles from the court-house. The court overruled plaintiff's motion, and refused to continue the case, to which ruling of the court the plaintiff excepted, and prayed that her exception be saved to her, which was done.

The law of the case involved in the trial is as follows:

"If any person having a state license to sell spirituous liquors  *  *  *  shall sell or give any such liquors  *  *  *  to any person who is intoxicated at the time, or who is in the habit of drinking to intoxication, when he knows or has reason to believe such person  *  *  *  is intoxicated or is the habit of drinking to intoxication, or if he permit any person to drink to intoxication on any premises under his control,  *  *  *  he shall be guilty of a misdemeanor, and fined not less than twenty nor more than one hundred dollars." Code, c. 32, s. 16.

"Every husband, wife, child, parent, guardian, employer or other person, who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have the right of action in his or her name,  *  *  *  against any person who shall, by unlawfully selling or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person." Code, c. 32, s. 20.

The undisputed facts are as follows: About the 27th day of November, 1891, at the time in question, John D. Horton had license to sell whisky, *etc.*, at his premises in the town of Ronceverte. On that day the husband, John J. Halstead, came to defendant's saloon, having about two hundred and eighty eight dollars in currency and a check on the Bank of Ronceverte for three hundred and twelve dollars, the proceeds of the sale of a lot of cattle, the sole and separate property of plaintiff. John J. Halstead told defendant, Horton, he had a check and wanted him (Horton) to go to the bank to identify him. Defendant went to the bank, and said to the cashier, "Mr. Morton, this is John Halstead, from Nicholas county, ex-sheriff." Defendant went out of the bank, and the cashier cashed Halstead's check for three hundred and twelve dollars. Horton sold him a quart bottle of whisky before they went to the bank.

Halstead went back to the saloon. He went to a restaurant, got his breakfast, drank some out of the bottle, became intoxicated to insensibility. When he came to, he was in the "lockup," and all his money was gone.

The only question in dispute was: Was the sale or sales by Horton unlawful? There is no question on this evidence that the husband, John J. Ha'stead, was then and before in the habit of drinking to intoxication; but did defendant know, or have reason to believe, that such was the habit of John Halstead? Halstead had been in Ronceverte in the fall of 1890, about November, "was on a spree several days," and was in Horton's premises during that spree; but defendant says in his evidence that about July 14, 1890, he went to Buckhannon, Va., under a contract to superintend some grading, and was only at home on Sundays to see his family, until December 3d; that he would come home Saturday night, and go back to Buckhannon on Monday.

Plaintiff, on her motion for a new trial on the ground of newly discovered evidence, files the affidavits of three witnesses, who state that there was a camp meeting in Greenbrier county, eight miles west of Lewisburg, beginning on the 16th day of August, 1890, lasting about one week, and that defendant, Horton, was at the camp meeting for several days; but this does not cover the time in November, 1890, when Halstead was drunk and drinking in Ronceverte; but this would only go to the credit of the witness, "and the general rule is that a new trial will not be granted to enable the party asking it to discredit a witness who testified against him on a former trial." *State* v. *Betsall*, 11 W. Va. 703.

When in the evening, about five o'clock P. M., at the close of her evidence in rebuttal, plaintiff moved the court to continue the case until the next morning, to enable her to have present and examine the "important witness John T. Bowes," who had been summoned, had been present, but was then absent, being at a place about four miles away, the court, in the exercise of its wise discretion, and as is often done in such circumstances, could without error have continued the case until morning; but there is nothing in

this record to show that the court in refusing to do so abused such discretion, or in any respect plainly committed error. There is no affidavit of his materiality, no statement of what plaintiff expected to prove by him, whether it was in rebuttal or in chief, or anything by which this Court can determine upon its competency, much less its importance; and the business of the court may have been urgent and pressing; and, in any event, the plaintiff then had it in her power as matter of right to suffer a non-suit.

The question asked the witness John G. Tobin by plaintiff and rejected by the court would seem to have been relevant and material, for the loss of six hundred dollars from the person of John J. Halstead, as caused by his intoxication, is expressly averred in the declaration; and it would seem to have been also admissible in rebuttal, as tending to show that it was not upon his person when he was put in the "lockup." But the counsel for plaintiff seem to have abandoned the question, although, when the objection was sustained, they noted an exception. At any rate, they did not so modify the question as to relieve it from the objection of assuming an important fact not proved. There is nothing but the inference to be drawn from the question itself to inform this Court what answer the witness was expected to give. It is not made the subject of a formal bill of exceptions, as distinguished from a mere note of exception in passing, made during the trial, and found in the certificate of evidence; nor is it made one of the grounds of the motion for a new trial; nor does it appear to have been in any way brought to the attention of the trial-court on such motion, so that it could be reviewed. Under our statute, the evidence, not the facts, is certified. It often covers hundreds of printed pages, with exceptions noted by the dozen sprinkled throughout the certificate, It would be unreasonable to expect the Circuit or appellate court "to explore the entire mass for the ascertainment of defects which the exceptor himself would not or could not point to their view." See opinion of Justice Daniel in *Camden* v. *Doremus*, 3 How. 515, 530; 2 Thomp. Trials, § 2786; *Gregory's Adm'r* v. *Railroad Co.*, 37 W. Va., 606, 609. (16 S. E. Rep. 819).

The first ground assigned on the motion for new trial is that the verdict is contrary to the law and the evidence. No instructions were given or refused, and the rulings of the court as to the evidence have already been considered. As to the evidence, that was conflicting, so that the verdict can not be disturbed as plainly contrary to the evidence. The second ground is that of newly-discovered evidence, and on this plaintiff filed six affidavits and defendant five counter affidavits. Plaintiff filed her own affidavit and the affidavit of her husband, who attended to this suit, and transacted her business, showing satisfactorily (1) that the newly-discovered evidence hereafter mentioned was discovered since the former trial; (2) that reasonable diligence on the part of plantiff and of her husband and agent was used, but did not and could not have secured it at the former trial. The remaining questions are: (3) Is it material in its object, and not merely cumulative, corroborative, or collateral? and (4) is it such as ought to produce, on another trial, an opposite result on the merits? See *Carder* v. *Bank*, 34 W. Va. 38 (11 S. E. Rep. 716) where the rule is laid down, and the cases in point are collected and cited. See *Betsall's Case*, 11 W. Va. 703 ; 16 Amer. & Eng. Enc. Law, 564.

Affidavit No. 6 filed by plaintiff is that of Robert A. Rutherford, and is as follows : "West Virginia, Greenbrier county. Robert Rutherford, on his oath, says that in November, 1891, he was at the saloon of John D. Horton, in the town of Ronceverte; that John Halstead was in the saloon, intoxicated, at the time, and purchased while in there a bottle of whisky from said Horton, and paid him for it ; that Halstead and Horton were talking as friends, and, after Halstead went out of the saloon, affiant thought he was too tight then to 'make it' around Moore's corner, and he stepped to the door to see if he (Halstead) would 'make it' or if the police would get him. He saw him go towards Eldridge's restaurant, and remarked to some boys who were there that he (Halstead) was all right as he had passed the corner. Affiant says that this was the day before it was charged that Halstead had been robbed of his money in Ronceverte. Affiant further says that he never

gave this information to the plaintiff in this case until after the trial of the case against Horton at the present term of this court.   R. A. Rutherford.   Subscribed and sworn to before me this 18th day of July, 1892.   S. R. Patton, Notary Public."   This witness says, in substance, that in November, 1891, the day before it was charged that Halstead had been robbed of his money, he was at the saloon of John D. Horton, in the town of Ronceverte ; that John J. Halstead was in the saloon, intoxicated, at the time, and purchased while in there a bottle of whisky from said Horton, and paid him for it.   Cumulative evidence is generally said to be additional evidence of the same kind to the same point. Black, Law Dict., *People* v. *Superior Court*, 10 Wend. 285, 294 ; *Parker* v. *Hardy*, 24 Pick. 246, 248 ; *Able* v. *Frazier*, 43 Ia. 175, 177 ; 1 Greenl. Ev. (15th Ed.) § 2.

Plaintiff introduced no evidence upon this point except that of her husband.   He says: "In November, 1891, I went to Horton's saloon.   Got a drink of whisky from him. Went to the bank, where they did not know me.   Went back to get Horton to identify me, and got another drink. Horton went to identify me at the bank.   I got three hundred and twelve dollars.   Went back with him to saloon. Got another drink, and a quart of whisky.   Took a drink or two out of it in saloon.   Then went to get breakfast, and can't tell what became of balance of it.   I suppose Horton knew I was in the habit of getting drunk.   He saw me the fall before.   *   *   *   I was not drunk when I got the quart."

This evidently covers the same time and place that affiant Rutherford speaks of.   Rutherford says he was intoxicated, so much so as to attract his attention, and to cause him to watch and see if, when on the street, "the police would get him."   Halstead says he was not drunk when he bought the bottle of whisky.   When he would be of the opinion that he was intoxicated he does not say, unless we are to infer that he means intoxication to that degree that he lost memory and sensibility—being helpless, and not knowing when his money was taken.   "Intoxicated," within the meaning of the statute, is such as attracts observation and becomes known to others, or gives them reason to be-

lieve the person is intoxicated; and of this a bystander would generally be a better judge than the party himself, whose opinion on the subject for obvious reasons is worth but little. There is no question that he was in the habit of becoming intoxicated, that he did become so on this occasion, and, by his own testimony, had taken three drinks in a short time. But the newly discovered evidence of affiant Rutherford is certainly evidence of the same kind and to the same point, except that one spoke from what he saw the other from what he felt; but it was not "additional" evidence of the same kind, to the same point, but antagonistic and contradictory, and therefore not cumulative; and the plaintiff is not bound by the mistaken opinion of her own witness.

Is it such as ought to produce on another trial an opposite result on the merits? For the purpose of this motion, credit will be given to the affidavit, unless something appears to discredit it. The counter affidavits do not tend to discredit the affidavit of Rutherford, for none of them touches the same point, but all relate to the point made on the trial, did Horton see and know Halstead when he was on a spree in Ronceverte, in the fall of 1890, and therefore know that he was in the habit of becoming intoxicated? The affidavit of Rutherford is in for the present purpose and not discredited.

How are we to determine that it ought to, or would be likely to produce a verdict for the plaintiff on the merits? It must not be taken by itself, but "in connection with that exhibited on the trial. The question is not whether a jury might be induced to give a different verdict, but whether the legitimate effect of such evidence would be to require a different verdict." Hitchcock, J., in *Ludlow* v. *Park* (1829) 4 Ohio, 5, 44.

On the vital point that on that morning in November, 1891, in his saloon in Ronceverte, defendant, John D. Horton, sold whisky, in a bottle or otherwise, to John J. Halstead, when he was intoxicated, the newly-discovered evidence set forth in this affidavit stands alone amid all the direct evidence on both sides. Plaintiff's witness Halstead says he was sober when he bought of Horton the bottle of

whisky. Her witness Quinn Morton, the cashier of the bank, says he was sober when Horton introduced him to get the check cashed. Horton says he left him in the bank, and did not see him again for more than twenty four hours. When he saw him in the saloon, he bought a bottle of whisky, to take home to his wife, and he was sober. He did not see him drink anything. His saloon-keeper, Wikoff, was in the saloon at the time, and no one else, when Halstead bought the bottle of whisky, which was not opened, but wrapped up; and he individually never sold him a drink of whisky in his life; and he did not know as a matter of fact, and had no reason to believe that Halstead was in the habit of drinking to intoxication.

The saloon-keeper, M. F. Wikoff, says he came in about nine o'clock in the morning. He saw Horton sell him the bottle of liquor. He came there twice that day. The next day he was drinking; did not see him drink and refused to sell him any liquor for that reason.

Defendant's witness Edward Eldridge say that about nine o'clock of the morning in question Halstead came to his restaurant for his breakfast; had his bottle with him. He looked sober, took a drink out of his bottle, ate his breakfast, paid for it, and went away.

Charles Lee, witness for defendant, saw Halstead come in and get the quart of whisky; had it wrapped up; said he wanted it for his wife. He got nothing to drink while witness was in there.

Halstead is in the habit of becoming intoxicated, but the jury has already found that defendant did not know of such habit. He was certainly sober that morning. The burden of proof is on the plaintiff to show that at or about the time Halstead bought the bottle of liquor of Horton he had become intoxicated, and Horton knew it, or had reason to believe it. Can we say that, if this new testimony had been before this jury, it would have been enough to entitle plaintiff to a verdict on this point—enough on behalf of the one with the laboring oar to outweigh and overcome the testimony of every one of the witnesses who testified on this point, including all plaintiff's witnesses who were examined on this point as well as the witnesses

introduced by defendant who so testified—and make it the duty of the jury to find an opposite verdict on the merits? As I have already shown, the affidavits of Kelly, Knight, and Dwyer only tend to show that defendant, Horton, was in the county of Greenbrier several days after the 16th day of August, 1890, and therefore it is not true, as stated by him, that about July 14, 1890, he went to Buckhannon, Va., and was only at home on Sundays until December 3d; but this only tends to discredit or impeach the witness, and does not show that he was at home in November, 1890, when Halstead was at Ronceverte on a "spree," or in any way tend to show that Horton knew or had reason to believe that Halstead was in the habit of drinking to intoxication; or to contradict Horton where he says he had never seen Halstead but once before (November 1891) and that was about four years before that time, when he met him over at Lewisburg, where Halstead was introduced to him as ex-sheriff of Nicholas county, and he was then sober.

There is no controversy about the law of the case, but I may mention that the law on the subject when *Pegram* v. *Stortz*, 31 W. Va. 220 (6 S. E. Rep. 485) was decided has been amended, dispensing with the notice then required, among other changes, and now reads as found in section 20, c. 32, of the Code (Ed. 1891, p. 236). See Abb. Tr. Ev. 775; Lawson, Rights, Rem. & Pr. § 1124.

Judgment affirmed.