# CHARLESTON.

## GROGAN *v.* CHESAPEAKE & O. R'Y CO.

Submitted February 2, 1894.—Decided April 11, 1894.

1. RAILROAD COMPANIES—LIMITED RAILROAD TICKETS—DAMAGES.

A railroad ticket limited on its face to certain time for passage is not good after its expiration; and one who is on a train demanding passage upon it and refusing to pay otherwise his fare, may be ejected from such train, no more force being used than necessary, and, though injury result to the party from a lawful ejection, it is not a ground of action.

2. NEW TRIAL—REVERSAL.

Though evidence is conflicting, the court may set aside the verdict if against the weight of the evidence; but such power should be exercised cautiously. When the court does so, its action is regarded with peculiar respect in an appellate court and will not be reversed unless plainly wrong.

3. NEW TRIAL—CUMULATIVE EVIDENCE.

In determining whether after-discovered evidence is cumulative or not the court must see if the kind or character of the facts offered and of those presented on the former trial be the same, and not whether they tend to produce the same effect. It is the resemblence of such facts that makes them cumulative. The new and old facts may tend to prove the same proposition and still be so dissimilar in kind as to afford no pretence for saying the new facts are cumulative upon the old.

E. W. WILSON and S. C. BURDETT for plaintiff in error:

I.—*Newly discovered evidence.*—27 W. Va. 503; 35 W. Va. 418; 32 W. Va. 487.

II.—*One who has failed to apply for relief can not first raise the*

*issue of surprise by evidence on motion for a new trial.*—16 Am. & Eng. Ency. L. 542.

SIMMS, ENSLOW & CHILTON for defendant in error:

I.—*A person on the train after his ticket expires and who refuses to pay fare may be ejected.*—2 Wood's Ry. Law §§ 347, 352; Hutch. Carr. §§ 575, 576; Thomp. Carr. Pass. 70, 71; 34 W. Va. 65; 13 Am. Rep. 617; 18 Am. & Eng. R. R. Cas. 310 and note at end of opinion; also, this case as reported in 62 Md. 95; 64 Mo. 464; 61 Barb. 611; 63 N. Y. 101; 34 Md. 532; 40 Vt. 88.

II.—*As to verdict against weight of testimony.*—1 Graham New Trials 367, 374.

III.—*As to after discovered evidence.*—11 W. Va. 703.

IV.—*The appellate court will not disturb the discretionary order exercised by a trial-court in setting aside the verdict and awarding a new trial.*—12 W. Va. 116, and discussion by Judge HAYMOND, beginning on p. 119; 31 W. Va. 428.

BRANNON, PRESIDENT:

George T. Grogan sued the Chesapeake & Ohio Railway Company in trespass on the case, and obtained a verdict for one thousand and two hundred dollars which the court set aside; and Grogan obtained a writ of error to the order of the court setting aside the verdict.

Grogan purchased a round trip ticket from St. Albans to Charleston good for two days. He used it from St. Albans to Charleston, and, after the ticket had run out, he boarded a train to return to St. Albans, and the collector having rejected the ticket as not good and demanded of Grogan his fare, Grogan declined to pay. The collector told him he must either pay or get off, and he refused to do either, saying the conductor must put him off.

This expired ticket was not good for passage, and upon refusal of the plaintiff to pay fare or get off the train the company had the right to eject him from the train, using no more force than necessary. *McKay* v. *Railway Company*, 34 W. Va. 65 (11 S. E. Rep. 737); 3 Wood. Ry. Law, §§ 347, 352; Hutch. Carr. §§ 575, 576, 580a; *Pennington* v. *Railroad Co.*, 18 Am. & Eng. R. Cas. 310 and note; *Lillis*

v. *Railroad Co.*, 64 Mo. 464; *Hill* v. *Railroad Co.*, 63 N. Y.
101; *Elmore* v. *Sands*, 54 N. Y. 512; *McClure* v. *Railroad
Co.*, 34 Md. 532; *Shedd* v. *Railroad Co.*, 40 Vt. 88.

The right of ejection of the plaintiff existing undenied, it
is, however, contended that the plaintiff was pushed from
the train and hurt, and that as a consequence hernia fol-
lowed; and that more force was used in his expulsion from
the train than was necessary. Just here let us look at the
plaintiff's own evidence disregarding that for the defend-
ant. He held a ticket limited in time on its face constitut-
ing a special contract between him and the company, that
it would be used within that time or be no longer good.
He knew this. He was knowingly violating contract and
law when he entered the train with a determined purpose,
as evinced by his action, to ride on that ticket. He was
persistent in that wrong when told why the ticket was not
good. There could be no room for two opinions as to this.
The face of the ticket told him, the collector told him, that
the ticket was not good. As the Supreme Court of Mis-
souri said in *Lillis* v. *Railroad Co.*, *supra*, of a person hold-
ing a ticket not good on a certain train, may be more
strongly said here: "He went into that car not intending
to acquire a right to ride on that train, but to compel the
conductor to pass him on a void ticket, or make a case for
a suit for damages. His entry into the train was made with
evil intent, and he is entitled to no favor, but only to the
rights which the law gives a trespasser." Why did he per-
sist in staying on the car when requested to get off? He
said, "You must put me off." He had no right to insist on
the collector's putting him off. It was his duty as a law
abiding man to get off. He brought the expulsion on him-
self by wrongful conduct.

It was held in *Railroad Co.* v. *Gants*, 38 Kan. 608 (17
Pac. Rep. 54) that a person without a good ticket is a tres-
passer and must get off when ordered, and can not invite
force to make a case. What is the height of the company's
offence? By the plaintiff's own evidence, when the col-
lector said the ticket was out of date, and the plaintiff in-
sisted on his passage without payment, the collector said:
"You will have to get off or pay your fare," and then went

and consulted with the conductor, and returned and caught plaintiff by the arm and said, "Come on; you will either have to get off or pay your fare;" and the plaintiff got up without resistance and walked out upon the platform, and offered his ticket again, and the train was stopped, and the collector said: "Get off," and the plaintiff replied, "I am not going to; you will have to put me off." Why this demand? It was not necessary to save his right, had he had any, because the collector had already laid hands upon him and removed him from his seat, to eject him. Why undergo the danger of injury by being forced from the train, when he could have safely stepped off? If he had any colorable ticket, he might be excused for demanding actual expulsion; but he had no show of right to remain. What might the company's servants do to enforce its clear right of ejectment? What did they do? The collector, as the plaintiff says, after saying again for the second or third time: "Get off; get off," put his hand against his back, and shoved him off the step down into a ditch, and he fell on his feet and hands and notified persons that he would need them as witnesses. This was not an imprudent actor excessive force. How were the trainmen to get him off? Were they under obligation to get down and tenderly lift or ease him down? They did not strike or push him too hard, or use any harsh words. They did not push him off unawares. If he wanted, as he said, actual expulsion, he had warning to be alert and land safely on the ground. The train was not stopped on a fill, and he thrown down the bank. It was in a cut, with a bank two or three feet high and a slight ditch for drainage by the side of the track. It was not, and is not claimed to have been, a dangerous place. The plaintiff says it was six or seven feet to the bottom of the ditch. He was a young agile man twenty nine years of age. He could readily have saved himself, if even it was so high as six feet. The company had a clear right to put him off the train and exercised that right as a last resort at the bidding of the plaintiff by an act necessary to enforce it, not imprudent or excessive; and, even if injury did result to the plaintiff, it is not actionable, because justified by law—a case of *damnum absque injuria.*

In the case above cited (*Railroad Co.* v. *Gants*) it was held that in case the party is without warrant on the train and declines to get off and renders force necessary, he has no action unless the injury was willful, wanton and malicious. Deciding the case on the evidence of the plaintiff, the verdict was unwarranted and was properly set aside.

Let us next advert to evidence for the defendant. Conductor McDowie says that in the car he said to Grogan : "Why don't you pay twenty cents and have no dispute?" and Grogan replied : "I want you to put me off; that is as good a case as I want." He says the collector laid his hand on Grogan's shoulder, and told him to come on and get off; and he deliberately got up, went to the platform and stepped down to the bottom step, and said, "Now put me off," and the collector took hold of his arm, and Grogan hung back, and the conductor said : "Get off; you are delaying the train," and that Grogan "stepped down just as light as a child;" that he did not fall; that he was not pushed off; that the step was about an ordinary one, about as high as a chair. Brakeman Raines says he stepped down, and did not fall, and was not pushed off. A lady passenger had her attention attracted to the transaction in the car, and next had her head out of the window, and says Grogan did not fall, and, if he had, she could have observed it, and when she saw him outside of the car he was standing up laughing. The plaintiff and another witness say he was shoved off; and the conductor and brakeman say he was not, but got off and did not fall, and the lady says he did not fall, and, if he had she could have seen. She corroborates the trainmen in saying that she saw him standing, and not on his feet and hands across the ditch. Here the evidence conflicts as to the question whether Grogan was shoved off or got off the train, and whether its effect was to cause him to fall.

We see it often stated in books that, where the evidence is conflicting, a new trial can not be granted. Certainly that is not law so broadly stated ; for it has again and again been held that, though the evidence is conflicting, a verdict may and should be set aside if against the weight of the evidence, though it is a power to be cautiously exer-

cised.. A verdict counter to justice and the weight of evidence can not be infallibly shielded from the supervision and corrective power of the court on the ground that the evidence is conflicting. *Grayson's Case*, 6 Gratt. 712 ; *Miller* v. *Insurance Co.*, 12 W. Va. 116; *Reynolds* v. *Tompkins*, 23 W. Va. 229 ; *Martin* v. *Thayer*, 37 W. Va. 38 (16 S. E. Rep. 489). And, as the trial-court saw the witnesses, their demeanor and action, and all the surroundings and outlook of the trial, its action in awarding a new trial will not be lightly overruled any more than where it refuses to do so, but its opinion is entitled to peculiar respect. Cases just cited. The weight of evidence here preponderates for the defence. This is an additional reason why we can not reverse the Circuit Court's order.

After discovered evidence was made a ground for a new trial in the Circuit Court. The plaintiff claimed, that by reason of being pushed from the car inguinal hernia was produced. He and his wife gave evidence that until after the occurrence he had no hernia, and a physician stated that the hernia did not seem to have been of recent occurrence. After the trial the defendant presented the affidavit of Dr. Miller that years before the occurrence in question he had treated Grogan for hernia. Newly-discovered evidence, to call for a new trial, must be not merely cumulative and must be such as ought upon a second trial to call for a different verdict. *Carder* v. *Bank*, 34 W. Va. 38 (11 S. E. Rep. 716); *Halstead* v. *Horton*, 38 W. Va. 727 (18 S. E. Rep. 953). This evidence of Dr. Miller, if true, is very potent in its import and would call for a different verdict, since, if the plaintiff received no real injury, he could recover no such amount of compensatory damages as that found, but merely nominal damages, even if excessive force had been used.

But is the evidence cumulative ? Whether evidence is cumulative in a legal sense is very often a very nice question, and there is some misunderstanding touching the matter. It is hard to give the exact definition. We must not on the one hand jump to the conclusion, that, simply because since the trial more evidence of strong and decisive import is found, it will demand a new trial; nor on the other hand that, simply because it is more evidence bearing

on the same issue or point of contest tried in the former trial, it is cumulative merely. Of course evidence plainly calling for a new trial and not cumulative must of necessity bear on the same point involved in the former trial, else it would be irrelevant and foreign to the issue and not a ground for new trial because collateral.

To determine in a particular case whether newly-discovered evidence is cumulative, we must look at its character or kind. We must next look at the character and kind of the evidence on the former trial touching the point to which the new evidence relates. If on such comparison we find that they resemble in character, in kind, then the new evidence is merely cumulative; otherwise, though it bear on the same point or issue as the former evidence, it is not cumulative. As this Court said in point 1 of syllabus in *Halstead* v. *Horton, supra,* "Cumulative evidence is additional evidence of the same kind to the same point." Though on the same point, it may yet not be cumulative; but, if of the the same kind, it is cumulative. Nor can we look at the *effect* of the new evidence in considering whether it is cumulative. We regard its probable effect on a new trial in determining whether it ought to produce a different verdict, conceding that it is not cumulative; but we do not regard its effect in determining whether it is cumulative. We must analyze its character or kind. If dissimilar to the previous evidence, it is not cumulative; if similar, it is cumulative. It is the resemblance that makes it cumulative. The new evidence may bear upon and tend to prove the same matter or proposition as the old, yet it may do this by establishang facts so dissimilar in kind, as compared with the facts proven by the former evidence, that it would afford no pretence for saying it is cumulative. So much for general rule or statement. It might be exemplified by instances of illustration, but this would not give any stronger light. We have to work out each case as it arises under these general statements or tests. See *St. John* v. *Alderson,* 32 Gratt. 140 ; *Wynne* v. *Newman,* 75 Va. 811.

Under these tests it is not so easy to say whether this evidence is or is not cumulative, but I am of opinion it is not

cumulative. It goes to prove a distinct affirmative fact, not proven, and which no evidence tended to prove on the trial; that is, that ten years before the expulsion from the train Grogan was afflicted with hernia. The defence did not assert or attempt to prove that fact on the formal trial, but sought to show from the fact that the plaintiff walked several miles after leaving the train and made no mention of any hurt in conversation the evening of that day, that he really received no hurt. The most that can be said on the plaintiff's side to show that the evidence is but cumulative is, that Grogan and wife stated, that up till then Grogan had not hernia, and that it would result therefrom that this permanent hernia could not have existed ten years before; but it seems to me that evidence to prove the particular fact that, ten years before, Grogan was treated for hernia would not resemble any evidence given in the case, and as proving a distinst fact not similar to any fact already in evidence, indeed distinct from and dissimilar to any fact proven on the former trail, would not be regarded as merely cumulative.

For these reasons, we affirm the order granting the new trial.