301 S.E.2d 843

**Carson WAGGY, et al.**

v.

**Reed WAGGY, et al.**

**No. 15575.**

Supreme Court of Appeals of
West Virginia.

March 30, 1983.

George I. Sponaugle, Sponaugle & Sponaugle, Franklin, for appellees.

George R. Triplett, Elkins, for appellants.

PER CURIAM:

This is an appeal by Reed Waggy from an order of the Circuit Court of Pendleton County regarding the ownership of three certificates of deposit. The court ruled that the certificates belonged to the appellant's brother, Carson Waggy, the appellee. The appellant's principal assertion on appeal is that he is entitled to one-half of the value of these certificates. We disagree, and consequently affirm the decision of the circuit court.

This case began in 1977 when Carson Waggy filed a civil suit in the Circuit Court of Pendleton County for dissolution and division of a farming partnership he had operated with his brother, Reed Waggy, for approximately twenty years. The par-

ties' father, William R. Waggy, had originally been involved in the partnership, but after Mr. Waggy reached a certain age he turned the operation of the farm over to his sons. It was after differences arose between the brothers that Carson filed the dissolution suit and Reed filed a counterclaim.

The case originally was tried before a commissioner who found, *inter alia*, that the three certificates of deposit at issue in this appeal were the individual property of Carson Waggy. The appellant filed an exception to the commissioner's findings.[1] The circuit court held a hearing and by order dated November 5, 1979, overruled the appellant's exception and affirmed the finding that the certificates belonged to Carson.

On June 23, 1981, the commissioner held a hearing, pursuant to the court's instructions in its November order, to take further evidence on certain personal property involved in the suit. Although the certificates of deposit were not part of the property to be discussed, during the hearing appellant's counsel moved to reopen the testimony on the certificates. The commissioner denied the motion but did allow the appellant to vouch the record by introducing the will and appraisement of the William R. Waggy Estate which indicates that certain certificates of deposit were part of the estate. The appellant argued at the hearing that the documents were newly discovered evidence, but the commissioner disagreed.

The original hearing in this case was held before the commissioner on June 19, 1979. At that hearing, Carson Waggy testified that his father gave him the certificates in question in 1968 and at that time the certificates were in his and his father's name jointly. After his father's death in 1971, Carson changed the ownership of the certificates so that they were joint certificates of deposit in the names of Carson Waggy or Reed Waggy. Sometime later Carson removed Reed's name from the certificates.

Upon further examination Carson testified that two of the certificates had originally been in all three names, but that his father had Reed's name removed in 1967. He stated that after he put Reed's name on the certificates after his father's death, he kept possession of the certificates.

Reed Waggy testified that his brother Carson came to him after their father's death and told him: "I got the money. He said we worked for that money, it's our money and he said I'm going to go over to the Bank and I'm going to re-write these Certificates in yours and my name."

On the above evidence the commissioner found that Carson should be allowed to retain the certificates of deposit as his personal property based on the facts that: "... the defendant [Reed] never received the same or ever was allowed to have control of the same. At no time did the defendant ever have physical possession of the same and at no time were the same ever stored or kept in a place used in connection with the partnership assets."

*W. Va. Code*, 31A–4–33 [1969] which deals with jointly registered bank accounts, provides in part:

When a deposit is made by any person in the name of such depositor and another or others and in form to be paid to any one of such depositors, or the survivor or survivors of them, such deposit, and any additions thereto, made by any of such persons, upon the making thereof, shall become the property of such persons as joint tenants; and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of them during the lifetime of them, or to the survivor or survivors after the death of any of them; ...

In *Dorsey v. Short*, 157 W.Va. 866, 205 S.E.2d 687 (1974), we found that in states that have statutes similar to ours the cases uniformly have held that "during the joint lives of the depositors, a person donating the funds may show that he did not intend to create a joint tenancy, notwithstanding

---

**1.** The appellant actually filed several exceptions to the report, but he appeals the court's decision insofar as it pertains to the certificates of deposit only.

the account is in joint form." 157 W.Va. at 872, 205 S.E.2d at 690–691. The intention of the donor depositor is the key to the decisions.[2]

 Applying this principle to the facts before the commissioner, we cannot conclude that the evidence plainly and decidedly preponderates against the commissioner's decision. The appellant contends that the court erred in refusing to consider the estate appraisement of William R. Waggy as evidence to show that the certificates were part of that estate. Although at the original hearing counsel posed a question to Carson Waggy about the estate settlement, no attempt was made to introduce the relevant documents and the line of questioning was not pursued. It was not until the hearing on June 23, 1981, that appellant attempted to overcome the commissioner's findings by showing that the certificates were part of their father's estate and did not belong to Carson Waggy individually. This attempt came over a year after the court's order was entered finding that the certificates belonged to Carson. It is obvious that this "new" evidence does not meet our test for granting a new trial on the basis of newly discovered evidence. *See, State v. Stewart,* 161 W.Va. 127, 239 S.E.2d 777 (1977) and *Halstead v. Horton,* 38 W.Va. 727, 18 S.E. 953 (1894). The appraisement and will were filed in the county courthouse in 1971 and both documents were matters of public record for several years before this case arose. The appellant was well aware of the estate appraisement and its contents. Therefore, the court was correct in refusing to reopen

the issue of ownership of the certificates of deposit.

 Inasmuch as the evidence supports the commissioner's findings and the court's affirmance of those findings, we believe that the decision should not be disturbed on appeal. In syllabus point 8 of *Sanders v. Roselawn Memorial Gardens, Inc.,* 152 W.Va. 91, 159 S.E.2d 784 (1968), we said:

A finding of fact made by a trial chancellor or by a trial court sitting in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by this Court on appeal unless the evidence plainly and decidedly preponderates against such finding.

Accordingly, the judgment of the Circuit Court of Pendleton County is affirmed.

Affirmed.

---

**2.** The following excerpt from a statement by Kepner in 26 U.Chi.L.Rev. 376, 397, appears in *Dorsey v. Short,* 157 W.Va. 866, 205 S.E.2d 687 (1974):

The cases continue to hold that the party furnishing the funds for the account during his lifetime may show that he had no intention to make a gift, notwithstanding the form of the account. This is true in states which have statutes providing that the opening of the account in joint and survivorship form creates a joint tenancy and is also true in states that have a bank protection type statute. Not only may a party opening the account withdraw all the funds, but he may also terminate the interest to the co-depositor by merely instructing the bank to strike the latter's name

from the account or to substitute another name. These acts are treated as tantamount to a withdrawal.

If joint tenancies are in fact established by the opening of an account in joint form, so that the survivor is entitled to the proceeds, it should follow that the donee has an interest in the account during his lifetime. But it does not work this way. If the depositor claims during his lifetime that he did not intend to create the joint tenancy, notwithstanding the form of the account, the courts have found that no such tenancy was created and that the party opening the account and furnishing the funds prevailed over the non-contributing party.