STATE OF WEST VIRGINIA

*v.*

GARY LEE FRAZIER

(No. 13866)

Decided April 10, 1979.

*Robert E. Keltner* for P. E.

*Leo Catsonis* for intervenor-Robert Gordon Postelwaite.

*Chauncey H. Browning*, Attorney General, *Pamela Dawn Tarr*, Assistant Attorney General, for D. E.

MILLER, JUSTICE:

The defendant, Gary Lee Frazier, appeals from the denial by the Circuit Court of Wood County of his motion for new trial based on newly discovered evidence. We hold that the Circuit Court did not commit error, and affirm its judgment.

The defendant Frazier and Robert Postelwaite were jointly indicted for receiving stolen goods. The case was tried in April of 1972 and the jury returned a guilty verdict. Each was sentenced to one to ten years in the West Virginia Penitentiary. The sentences were stayed to enable them to perfect appeals.

In lieu of appealing, Frazier and Postelwaite filed petitions for writs of habeas corpus, which were granted by this Court on September 18, 1972, and made returnable to the Circuit Court of Wood County for hearing. The writs of habeas corpus were based on their claim of having been denied effective assistance of counsel at trial.

After a hearing in the Circuit Court of Wood County on the habeas corpus petitions, the matter was appealed to this Court, and we held that they had not been denied effective assistance of counsel. *State ex rel. Postelwaite*

*v. Bechtold,* ____ W.Va. ____, 212 S.E.2d 69 (1975). This ruling was subsequently appealed to the United States Supreme Court, which denied certiorari. 424 U.S. 909, 47 L. Ed. 2d 312, 96 S.Ct. 1103 (1976).

On December 2, 1975, defendant Frazier filed his petition in the Circuit Court of Wood County for a new trial based on newly discovered evidence. The basis of the motion for new trial was his claim that one of the prosecution witnesses, Jack Bennett, had given false testimony at trial concerning the presence of certain numbers on an automobile engine.

In particular, Bennett at trial identified the engine, found at his house by the arresting officers, as being the one he had bought from the defendants. He testified that the engine was from a blue 1968 Ford Mustang and that it bore certain stamped numbers. At the hearing on the motion for new trial, he stated there were no such numbers on the engine and that he had been coerced by the police to say there were. He also inferred that the numbers had been placed on the engine by a State's witness.

In further support of his motion, Frazier called as a witness Ronald Gilbert, a parts manager for a local Ford dealer, who stated that from his knowledge and experience the Ford Motor Company did not stamp serial numbers on engines. He also testified that he had inspected the engine in question, which had been kept at a local garage, and that it appeared that the stamped numbers were irregularly spaced on the engine block. Frazier's counsel produced several 1968 Ford engines which were inspected by the court, and all parties agreed those engines did not have stamped numbers on their blocks.

Defense counsel requested that the court inspect the engine in question to verify that the number stamped on its block appeared to be irregularly spaced. The record contains a photograph which had been introduced in evidence at the original trial which shows the engine block with the numbers stamped on it. The court took under advisement the question of whether it would view

the engine. A few days after the motion for new trial had been heard, the engine disappeared from the garage. The record is silent as to the circumstances surrounding its disappearance.

We note initially that the defendants were not indicted for receiving the engine as stolen property, but were indicted for receiving a stolen 1968 Ford Mustang automobile.[1]

The transcript of the original trial is a part of the record before us and demonstrates that the State proceeded on the theory that the defendants received a stolen automobile. It proved the ownership of the vehicle from testimony of its owner, Patricia Gregory. She testified it had been stolen from in front of her apartment on Soyer Street in Parkersburg, where she had parked it on February 22, 1971.

The State's next witness, Randall Hall, testified that on that same evening he and an accomplice had stolen a blue 1968 Ford Mustang parked on Soyer Street. Hall testified that after he removed certain accessories from the vehicle, he parked it on the Montgomery Ward parking lot in Parkersburg. Hall stated that on the following day he went to Capri Motors, where Frazier and Postelwaite were employed. He advised them as to the location of the stolen car, and they indicated they were going to obtain it.

Hall also testified that later that same evening he returned to Capri Motors and saw the blue 1968 Ford Mustang. He said he was able to identify the car as the

[1] A relevant portion of the original indictment is as follows:

"[Defendants] did unlawfully and feloniously receive from Randall K. Hall and George Chester DeBerry, one (1) 1968 Ford Mustang automobile of some value, the goods and chattels of Patricia L. Gregory, which said 1968 Ford Mustang automobile was previously feloniously taken, stolen and carried away, and they, the said GARY LEE FRAZIER and ROBERT GORDON POSTELWAITE, then and there well knew that the said 1968 Ford Mustang automobile had been unlawfully and feloniously taken, stolen and carried away, ..."

one he had stolen because its trunk lid had a bulge where he had pried it open.

In light of these facts from the State's case at the trial, it is obvious that the State proved a prima facie case of receiving stolen goods. The crime is statutorily defined,[2] and we have set out the essential elements in *State v. Basham*, ___ W.Va. ___, 223 S.E.2d 53, 59 (1976), approving an early statement in *State v. McGraw*, 140 W. Va. 547, 85 S.E.2d 849 (1955):

> "In *State v. McGraw*, 140 W.Va. 547, 85 S.E.2d 849 (1955), this Court, in examining the offense of buying and receiving stolen goods as described in Code, 61-3-18, stated:
>
> > " 'The essential elements of the offense created by the foregoing statute are: (1) The property must have been previously stolen by some person other than the defendant; (2) the accused must have bought or received the property from another person or must have aided in concealing it; (3) he must have known, or had reason to believe, when he bought or received or aided in concealing the property, that it had been stolen; and (4) he must have bought or received or aided in concealing the property *with a dishonest purpose*.' " [Emphasis in original]

The newly discovered evidence offered as grounds for the new trial pertained to whether the engine which had been identified at trial was, in fact, the engine from the stolen Mustang. The witness Bennett at trial testified that he had seen the defendants dismantling the blue Mustang and that he had bought the engine from them. His affidavit and testimony at the hearing on the newly

---

[2] W.Va. Code, 61-3-18:

"If any person buy or receive from another person, or aid in concealing, or transfer to a person other than the owner thereof, any stolen goods or other thing of value, which he knows or has reason to believe has been stolen, he shall be deemed guilty of the larceny thereof, and may be prosecuted although the principal offender be not convicted."

discovered evidence denied the presence of any numbers on the Mustang engine, contrary to his trial testimony.

The issue of the identity of the engine is at best a secondary matter. The State indicted the defendant for receiving a stolen 1968 Mustang, and was not required to prove that all of the various parts removed from the automobile and sold did, in fact, come from it. Proof of the identity of such parts would have been vital if the buyers of the parts had been indicted for receiving them. *See, e.g., Duncan v. State*, 253 Ark. 53, 484 S.W.2d 340 (1972). Here, however, the State charged the defendants with receiving a stolen 1968 Mustang. The State's burden, insofar as the stolen property was concerned, was to establish that the Mustang was stolen by someone other than the defendants, and that they thereafter obtained it knowing it had been stolen. The identity between the stolen article and the received article is an essential element of the State's case, as noted in 76 C.J.S. *Receiving Stolen Goods* § 19:

> "The identity of the property received with that alleged to be stolen must be established beyond a reasonable doubt, and by the most direct and positive testimony of which the case is susceptible. However, identity may be established by circumstantial, as well as by direct, evidence. Generally speaking, the mere fact that the property is of the same kind as that stolen is, in the absence of other circumstances, not sufficient to establish identity...."

The matter of identification of a stolen vehicle as the one received was treated in *State v. Stowers*, 2 Wash. App. 868, 471 P.2d 115 (1970), in the following fashion:

> "Nevertheless, there was sufficient direct evidence (color, year, model, date stolen and returned, punched ignition, etc.) to enable the jury to reasonably find that the car in question was in fact the Logan vehicle." [471 P.2d at 118]

*See, e.g., Bell v. State*, 220 Md. 75, 79-80, 150 A.2d 908. 910-11 (1958); *Morris v. State*, 537 S.W.2d 721, 722-23

(Tenn. Cr. App. 1976); *Smith v. State*, 163 Tex. Cr. R. 265, 290 S.W.2d 530 (1956).

Consequently, Bennett's testimony at the hearing as to the lack of numbers on the engine was not relevant to any issue in the underlying criminal case. The same is true of the testimony of Gilbert.[3]

The basis of awarding a new trial for newly discovered evidence was early established in Syllabus Point 1 of *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894);

> "A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side."

Judge Haymond in *State v. Spradley*, 140 W.Va. 314, 325-26, 84 S.E.2d 156, 162 (1954), collects numerous cases reaffirming this rule and notes that all five elements must be satisfied.

Not only has the defendant offered no explanation for the three-year delay in discovering the new evidence, but it is apparent that this evidence is not material to

---

[3] Gilbert's testimony at the hearing on the newly discovered evidence motion is confusing, since he was not certain if the Ford Motor Company stamped alternative numbers on the engine block which might include some of the numbers which are a part of the serial number of the car.

any issue in the case. Its only conceivable value is to impeach those State witnesses who testified that a series of numbers were on the engine block at the time the engine was found at the witness Bennett's house.[4]

In *State v. Stewart*, ____ W.Va. ____, 239 S.E.2d 777 (1977), we recognized that, under certain circumstances, newly discovered evidence consisting solely of impeachment testimony may be sufficient to warrant a new trial if all the elements stated in the *Halstead* rule are met. *Stewart* involved newly discovered evidence which not only impeached the State's principal witness, but also furnished support for the defendant's alibi defense. Because of the dual and favorable nature of this evidence, we concluded that such evidence could well produce an opposite result at a second trial on the merits.[5]

---

[4] At trial the State called Guy Davidson of the National Auto Theft Bureau, and Dexter Buckley, Jr., a Parkersburg police officer who had accompanied Davidson and other law enforcement officials to Bennett's house to obtain the engine. At that time Buckley took photographs of the numbers on the engine which were introduced at trial. At the hearing on the newly discovered evidence, the State produced Robert Taylor, a State trooper, and Alex Gaiman, an F.B.I. agent, both of whom had been with Davidson and Buckley and had inspected the engine at Bennett's house, and who testified they had seen the numbers on the engine.

[5] The newly discovered evidence rule contained in *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894), will not apply where the State has suppressed exculpatory material. In this latter event, the constitutional due process standard only requires that the evidence would have a reasonable likelihood of affecting the jury verdict. *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S.Ct. 1194 (1963); *Giglio v. United States*, 405 U.S. 150, 31 L. Ed. 2d 104, 92 S.Ct. 763 (1972); United States v. Agurs, 427 U.S. 97, 49 L. Ed. 2d 342, 96 S.Ct. 2392 (1976); *Wilhelm v. Whyte*, ____ W.Va. ____, 239 S.E.2d 735 (1977): *State v. Cowan*, 156 W.Va. 827, 197 S.E.2d 641 (1973); *State v. McArdle*, 156 W.Va. 409, 194 S.E.2d 174 (1973). Here, there is no evidence of suppression of evidence. Contrary to the defendant's assertion, the disappearance of the engine after the hearing on the newly discovered evidence does not raise a due process issue, since (1) there is no evidence the State was responsible for the disappearance; (2) the substance of the evidence was already in the record through witnesses' testimony and photographs so that the evidence was not actually "lost;" and (3) the engine numbers were irrelevant and not exculpatory in the *Brady-Agurs* constitutional sense.

The "newly discovered" evidence in this case falls far short of the *Stewart* impeachment standard. Bennett's testimony as to the lack of numbers on the engine block does not impeach the testimony of Hall, the State's key witness, who had identified the stolen vehicle and stated that the defendant Frazier and Postelwaite had obtained it from him. Furthermore, it is at best impeachment on a collateral issue, the identity of the engine, which is not relevant to any material element of the crime of receiving a stolen automobile.

The trial court was thus correct in rejecting the motion for new trial based on newly discovered evidence, and we affirm its judgment.

*Affirmed.*