# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Gregory Ivan Settle,**
**Petitioner Below, Petitioner**

**vs)  No. 14-0907** (Kanawha County 09-MISC-319)

**David Ballard, Warden, Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

August 28, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Gregory Ivan Settle, by counsel Barron M. Helgoe, appeals the order of the Circuit Court of Kanawha County, entered August 19, 2014, that denied his petition for post-conviction habeas corpus relief. Respondent David Ballard, Warden, Mount Olive Correctional Complex, by counsel Julie A. Warren, filed a response. Petitioner filed a reply. On appeal, petitioner argues that (1) his trial counsel was ineffective; (2) his appellate counsel was ineffective; (3) the circuit court erred in failing to grant him a new trial on the basis of newly discovered evidence; and (4) the circuit court's cumulative error violated his constitutional rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The facts of petitioner's underlying criminal case are these: On the morning of August 17, 2007, N.R. ("the victim") opened the door of her trailer to check on her dogs and found a man holding a knife. The man shoved the victim inside her trailer and onto the floor. The two struggled, but the man eventually overpowered the victim, straddled her, attempted to remove her clothing, and then sexually assaulted her. The attack stopped when the victim's dog bit the man on the leg. The man then fled the scene. The victim immediately called the police and described the assailant as having "shaggy, brown, dirty hair and . . . closely shaven face. Tall and slender." She also said he was wearing a "bright green t-shirt and blue jeans" and that he was wearing a gold ring that cut her eye during the assault. The police arrived at the scene a few minutes later, then took the victim to a McDonald's to look at an individual whose clothing fit the description of the assailant. However, the victim said that man was not the assailant because her assailant was younger and was clean-shaven.

On August 28, 2007, eleven days after the assault, the victim saw her assailant boarding a bus. She called 911 to report the sighting, and to provide the number of the bus the man had boarded and a description of the man's clothing: white t-shirt, khaki shorts, white socks, and

1

white shoes. She also said the man's hair seemed to be shorter than it was at the time of the attack. Soon thereafter, the police stopped the bus and detained a man matching the victim's description. A deputy then retrieved the victim from her home, told her another officer had detained a man "matching her description," and drove the victim past the man who was sitting or standing on a curb (hereinafter the "showup identification"). Petitioner identified the man on the curb, petitioner herein, as her assailant. The deputies noticed that petitioner had clipped hairs on his shirt and a bite mark on his right calf. Petitioner was arrested at the scene.

At the time of his arrest, petitioner was living intermittently with Curtis Lawson. Mr. Lawson's trailer was located near or next to the victim's trailer.

On November 15, 2007, petitioner was indicted on two counts of daytime burglary in violation of West Virginia Code § 61-3-11, and one count of first degree sexual assault in violation of West Virginia Code § 61-8B-3.

Petitioner's trial counsel had an investigator meet with petitioner in August, September, and November of 2007, and in January of 2008. On March 3, 2008, about a month before trial, petitioner asked the investigator to determine whether petitioner appeared on any surveillance video from the establishments he frequented during August of 2007, soon after the crimes at issue in this case occurred. The investigator attempted to retrieve any such surveillance video, but discovered none was available because such recordings are generally kept only for ninety days.

Prior to the trial in this matter, petitioner's counsel moved to have the victim's showup identification of petitioner suppressed on the ground that it was unfairly suggestive. The circuit court denied that motion based on its finding that the victim's identification of petitioner occurred when the victim saw petitioner boarding the bus, and not when she later affirmed her identification of petitioner to the deputies at the showup identification.

Petitioner's trial commenced on April 14, 2008. At trial, the victim testified that, prior to the attack, she was aware that a man named "Greg" (petitioner's first name) was staying nearby at Curtis Lawson's trailer. She also recalled meeting petitioner, in passing, a couple of times, when he had facial hair and long hair. She further testified that she had seen petitioner in the trailer park prior to the assault, that he would beg for money, and that he once tried to grab a pizza out of her hands. Finally, the victim testified that she was "100% certain" that petitioner was her assailant.

During the defense's case-in-chief, petitioner called his stepson, Joseph Withrow, who testified that petitioner had a mustache, a beard, and long hair on the evening of the assault, and that petitioner did not own a gold ring. Curtis Lawson testified that petitioner shaved his beard and cut his hair ten days after the occurrence of the crimes at issue in this case. Petitioner testified that, on the day of the assault, he had long hair and facial hair, which he did not cut or shave until August 27, 2007, ten days after the attack, to be more presentable for an August 28, 2007, hearing on an unrelated domestic relations matter.

2

On April 17, 2008, the jury found petitioner guilty of one count of daytime burglary and one count of first-degree sexual assault. Following his conviction, petitioner admitted at a recidivist proceeding that he had previously been convicted of two separate felony charges. In consideration of his recidivist status, the circuit court sentenced petitioner to a term of incarceration of not less than two nor more than fifteen years for daytime burglary and not less than fifteen nor more than twenty-five years for first-degree sexual assault. The circuit court ordered that petitioner's sentences run consecutively.

On February 12, 2009, petitioner's appellate counsel filed a direct appeal which alleged only one assignment of error: ineffective assistance of trial counsel. This Court refused that appeal.

Thereafter, petitioner filed a *pro se* petition for post-conviction habeas corpus relief. The circuit court then appointed habeas counsel who, on May 29, 2010, filed an amended habeas petition. On October 3, 2013, petitioner's second habeas counsel filed a second amended habeas petition which claimed the following grounds for relief: (1) ineffective assistance of trial and appellate counsel; (2) petitioner was actually innocent and his conviction was a miscarriage of justice; (3) newly discovered evidence should have triggered a new trial; (4) petitioner did not understand the consequences of the recidivist statute; (5) petitioner's bail was too high, and (6) the circuit court's cumulative error amounted to a violation of his constitutional rights.

The circuit court convened an omnibus hearing on May 12, 2014. Petitioner and his trial counsel both testified at the hearing. Petitioner testified that he told his trial counsel's investigator that, soon after the victim was attacked, he had used a female neighbor's phone to call an ambulance for Curtis Lawson. Petitioner testified that he did not know the neighbor's name, but asserted that she would be able to verify that he had long hair and a beard at that time the victim was attacked.[1]

Petitioner also called criminal attorney Charles Hamilton to testify as an expert. Mr. Hamilton opined that petitioner's trial counsel's investigation of the case was inadequate due to her failure to obtain any relevant surveillance videos or to interview residents of the trailer park who may have seen petitioner following the attack. Mr. Hamilton also opined that petitioner's appellate counsel was ineffective given that he could have raised the following issues on appeal, but did not: (1) the trial court's denial of petitioner's motion to suppress the victim's showup identification of petitioner; (2) the insufficiency of the evidence; and (3) the refusal of a jury instruction.

Petitioner also called Margaret Longwell, an investigator with the Kanawha County Public Defender's Office. Ms. Longwell opined that petitioner's trial counsel failed to conduct a proper investigation regarding petitioner's appearance at the time of the attack. Ms. Longwell explained that, soon after petitioner's trial, she came across Debra Schwoyer, who lived in the

---

[1] Although the record on appeal is not entirely clear on this point, it appears that petitioner did not tell his trial counsel about this telephone call until after petitioner's jury trial had concluded.

victim's trailer park and who claimed that—after the attack—a man with a beard who matched petitioner's description asked to use her telephone to call an ambulance.

The habeas court denied relief by order entered August 19, 2014. Petitioner now appeals that order. We review a circuit court's dismissal of a habeas petition under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). Further, "[o]n an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. Pt. 2, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973).

On appeal, petitioner raises four assignments of error. Petitioner first argues that the circuit court erred in finding that petitioner's trial counsel was not ineffective where trial counsel failed to properly investigate his case and failed to present relevant evidence that would have called into question the victim's identification of petitioner as the assailant.

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). We also noted in *Miller* that,

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. Pt. 6, *id.* at 6, 459 S.E.2d at 117. Finally, this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 15, 459 S.E.2d at 126, quoting *Strickland*, 466 U.S. at 689.

At petitioner's omnibus evidentiary hearing, his trial counsel testified that (1) she met with petitioner at the outset of the case and asked him "what needed to be done in his case immediately?"; (2) she followed up on petitioner's leads; (3) petitioner was not cooperative with the investigator and, instead, was focused almost solely on getting bonded out so he could conduct his own investigation; and (4) petitioner was so set on conducting his own investigation that trial counsel hired a psychiatric expert to determine if petitioner was competent to stand trial. With regard to any surveillance video, trial counsel testified that petitioner did not mention the possibility of such evidence until March 3, 2008, five months after he was indicted for his crimes. As for the dog bite evidence, trial counsel testified that her investigator spoke with the owners of the dog whom petitioner claimed had bitten him, but they denied any knowledge that their dog had bitten petitioner. Regarding Debra Schwoyer, trial counsel testified that petitioner did not inform her until *after* his trial that, soon after the victim was assaulted, he had used a neighbor's phone to call an ambulance. Finally, trial counsel testified that, with regard to the state of petitioner's hair and beard on the date of the crime, she made a strategic decision to call at trial only two of the five or six potential witnesses named by petitioner because the testimony of those two was more reliable than that of the others.

Based on the record on appeal, it is clear that the habeas court did not err in finding that petitioner failed to establish that his trial counsel's performance was deficient under an objective standard of reasonableness. Upon her appointment to petitioner's case, trial counsel spoke immediately with petitioner and inquired into and followed up on the leads petitioner mentioned, including those leads relating to the dog bite on petitioner's leg. Further, trial counsel's investigator met many times with petitioner and followed up on petitioner's leads. With regard to Ms. Schwoyer, it appears petitioner did not mention her to trial counsel until after his trial had concluded. Trial counsel cannot be held accountable for failing to investigate a potential witness of which she had no knowledge. With regard to any potential video evidence, petitioner's failure to timely mention the possibility of such evidence resulted in its loss. As for the evidence regarding the status of petitioner's hair and facial hair at the time of the crime, trial counsel presented the testimony of the two witnesses whom she believed were most credible in that regard.

It is also clear that the habeas court did not err in finding that petitioner failed to establish that, but for trial counsel's errors, the result of his trial would have been different. Here, the weight of the evidence presented against petitioner at trial was sufficient for the jury to find petitioner guilty of the crimes charged against him. For example, immediately after the attack, the victim gave a detailed description of petitioner. Second, she was able to determine that a similarly-clothed man (at McDonald's) was not her assailant. Third, she immediately recognized petitioner when she saw him board the bus. Fourth, she identified petitioner again during the roadside showup identification. Fifth and last, she clearly pointed him out in the courtroom at trial and said she was "100% certain" that he was her assailant. Additionally, the victim testified at trial that the attack stopped when her dog bit the assailant in the leg. Petitioner had a dog bite on his leg. Although petitioner claimed that a dog other than the victim's dog had bitten his leg, he presented no evidence to substantiate that claim.

Petitioner next argues that the circuit court erred in finding that petitioner's appellate counsel was not ineffective where he raised only one assignment of error: ineffective assistance

of trial counsel. Petitioner claims that his appellate counsel should have raised the circuit court's denial of petitioner's motion to suppress the victim's showup identification of petitioner because it was inappropriately suggestive.[2]

In petitioner's initial habeas petition and amended petitions below, he argued that his appellate counsel was ineffective because he failed to argue that petitioner was actually innocent. However, petitioner failed to raise the showup identification issue before the habeas court. As such, he did not present any evidence that the showup identification was suggestive or otherwise violated his constitutional rights. In fact, petitioner did not even call his appellate counsel to testify at the omnibus evidentiary hearing. We have said, "A litigant may not silently acquiesce to an alleged error. . .and then raise that error as a reason for reversal on appeal." Syl. Pt. 1, in part, *Maples v. W. Va. Dep't of Commerce, Div. of Parks and Recreation*, 197 W.Va. 318, 475 S.E.2d 410 (1996). Consequently, petitioner cannot now assert that the habeas court abused its discretion with regard to admission of the evidence resulting from the showup identification.

That said, even if petitioner had included the express claim that his appellate counsel was ineffective because he failed to challenge the circuit court's denial of his motion to suppress the victim's showup identification, that claim would have failed under *Strickland/Miller* because the circuit court correctly found that the victim identified her assailant when he boarded the bus. Thus, the showup identification thereafter was merely for the arresting officers' benefit to ensure they had pulled the man identified by the victim off the bus. Consequently, because the showup identification was not suggestive, there were no legitimate grounds for appellate counsel to attack the trial court's refusal to suppress it.

Petitioner's third assignment of error is that the circuit court erred in failing to grant him a new trial based on Ms. Schwoyer's affidavit, which he claims was newly discovered evidence showing his actual innocence. In this regard, we have said,

> "A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as

---

[2] As part of his argument, petitioner cites to the Eyewitness Identification Act, West Virginia Code § 62-lE-1 to -3 (2013) which provides that "[s]howups should only be performed using a live suspect and only in exigent circumstances that require the immediate display of a suspect to an eyewitness. . . ." W.V. Code § 62-IE-2(j). However, as petitioner admits, the Eyewitness Identification Act did not go into effect until July 12, 2013, long after petitioner committed his August 17, 2007, crime. Therefore the Eyewitness Identification Act is not applicable to this appeal.

ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side." Syllabus Point 1, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894).

Syl., *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979).

In light of *Frazier*, it is clear that the circuit court did not err in denying petitioner's motion for a new trial based on newly-discovered evidence, i.e. Ms. Schwoyer's affidavit, because petitioner's case did not come within rules two and three of *Halstead*/*Frazier*. With regard to the second rule, petitioner knew about his interaction with Ms. Schwoyer (even though he did not know her name) at the time he was arrested and when he first met with his trial counsel and was asked what needed to be done immediately in his case. He also knew about the interaction when he met repeatedly with the investigator assigned to his case. Therefore, petitioner's failure to timely impart the information regarding the use of a neighbor's (Ms. Schwoyer's) phone shows that petitioner was not "diligent in ascertaining and securing his evidence." As for the third rule regarding "merely cumulative" or "additional evidence of the same kind and to the same point" as presented at trial, petitioner's trial counsel presented the testimony of two witnesses at trial who stated that petitioner had a beard and long hair on the date of the attack. Therefore, Ms. Schwoyer's affidavit would have merely been "additional evidence of the same kind and to the same point" as presented at trial. Consequently, we find this assignment of error to be without merit.

Petitioner's fourth and final assignment of error is that the circuit court's cumulative error requires the reversal of his conviction. However, given that we have found no error herein, we find this assignment of error to be without merit.

Accordingly, for the foregoing reasons, we affirm the circuit court's August 19, 2014, order that denied habeas relief.

Affirmed.

**ISSUED:** August 28, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Robin Jean Davis