No. 18-0034 – *State ex rel. Smith v. Sims*

**FILED**
**May 18, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Loughry, J., dissenting:

While including unnecessary hyperbole and unsupported accusations against the prosecuting attorney, the majority pays mere lip service to the controlling law in this matter. Under the well-established test for obtaining a re-trial based upon newly discovered evidence, the moving party has the burden of showing, inter alia, that he was "diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict" and that the evidence "ought to produce an opposite result at a second trial on the merits." Syl., in part, *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979) (citation omitted). The defendant has failed to meet this burden. Accordingly, he is not entitled to a new trial. *See Anstey v. Ballard*, 237 W.Va. 411, 422, 787 S.E.2d 864, 875 (2016) (stating that all *Frazier* factors must be proven for award of new trial).

The purported "new" evidence in this case is the testimony of Mr. Banks, who claims that as he and Mr. Coleman were running away from their shootout with the defendant outside of the American Legion bar, they immediately happened upon a second, unrelated, shooter in a nearby alley, and that this other shooter is the person who inflicted the fatal gunshot wound to Mr. Coleman. Setting aside the seeming absurdity of Mr. Banks's claim for a moment, it is clear that the defense could have secured this information before the trial.

1

Indeed, Mr. Banks's presence at the crime scene was known to both the prosecution and defense counsel from the beginning of this case, and he was included on each side's witness list. Ten days after the indictment was returned against the defendant, the State provided the defense with a valid address in Cleveland, Ohio, where Mr. Banks could be reached.[1] Although defense counsel reportedly believed that the address was incorrect and that Mr. Banks did not wish to be found, the defense team never actually tried to contact Mr. Banks at this location. The defense lawyers never sent any letters to the address, never visited nor tried to telephone any occupants of this address, and never attempted to have a subpoena served upon Mr. Banks at this address. Moreover, the defense team had retained the services of a private investigator, yet never directed the investigator to visit the address or otherwise take steps to locate Mr. Banks. The defense even received, in discovery, a criminal background report on Mr. Banks that included information that could have been used to contact him, but this information was not pursued, either. According to the testimony presented during the hearing on the motion for a new trial, the only affirmative action that defense counsel took to contact Mr. Banks was to send a text message to a telephone number obtained from one of Mr. Banks's acquaintances. It is abundantly clear

---

[1]The address was for the home of Mr. Banks's sister. During the hearing on the motion for a new trial, Mr. Banks agreed that this was his "home base," the closest thing he had to a home address, and that he could easily be contacted at this address. In fact, he admitted receiving mail about this same case that was sent to the address.

to me that if the defense team had exercised due diligence, they could have located Mr. Banks before trial.

Critically, it is also unlikely that this so-called "newly discovered evidence" would have produced an opposite result at trial. The State's evidence included footage from video security cameras showing the defendant firing a handgun at Mr. Coleman and Mr. Banks while the defendant was standing on an elevated position on the steps of the American Legion bar. Although Mr. Coleman was able to flee the scene, he was found, lying with a gunshot wound, in the vicinity of the American Legion bar. Mr. Coleman died later that night, and the State presented uncontested expert testimony that the fatal wound was inflicted from a bullet that entered the left side of his abdomen and continued laterally and *downward* to the right pelvis area. This trajectory is consistent with having been shot from a gun held by a shooter standing at a position above the victim, as the defendant had done. Further, although a police officer testified that Mr. Banks gave "a [w]hole bunch of different stories" about what had transpired on the night in question, Mr. Banks never told police that the third person, Mr. Saunders, was the shooter. And, Mr. Saunders has denied any involvement. Finally, as to shell casings found in the alley, the State elicited testimony that those casings were in a weathered condition, indicating they had been in the alley well before the murder occurred. In short, the defendant's "newly-discovered evidence" is wholly contradicted and not likely to lead to a different outcome at trial.

3

Regarding the majority's unfounded implication that the prosecuting attorney somehow violated her obligation to ensure that justice was done, the majority does little more than make generalized statements about *Brady v. Maryland* and *Berger v. United States*. Notably absent is any explanation concerning how the prosecutor supposedly ran afoul of the law of these cases. There is no suggestion that the prosecutor knew, but failed to disclose, that Mr. Banks would accuse Mr. Saunders of being the shooter. Furthermore, the record establishes that the State timely provided the defense with an accurate address for Mr. Banks. Although one of the defense lawyers testified that he came to doubt whether Mr. Banks lived at that address, he never accused the State or any police officer of knowingly providing false information. Finally, the State was under no obligation to call Mr. Banks as a witness. The majority's insinuations about prosecutorial misconduct, and lofty talk about "the very integrity of the criminal justice system" being "at stake" in this post-trial proceeding, do little to obfuscate the defendant's failure to prove an entitlement to a new trial.

Based upon my review of this matter, I am left with the firm conviction that the trial court exceeded its authority when granting the defendant a new trial. The jury's verdict in this matter should stand. Because I would grant the State's petition for prohibition, I respectfully dissent.

4