**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Calvin Gray,**
**Petitioner Below, Petitioner**

**vs.)  No. 19-0849** (Kanawha County 98-MISC-545 and 06-MISC-350)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Calvin Gray, by counsel Robert P. Dunlap II, appeals the order of the Circuit Court of Kanawha County, entered on August 25, 2019, denying his amended petition for a writ of habeas corpus. Respondent State of West Virginia appears by counsel Patrick Morissey and Andrea Nease Proper.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Gray, currently serving a sentence of incarceration for life, without mercy, for his conviction of the first-degree murder of Artissa Bennett, appeals the Circuit Court of Kanawha County's denial of his petition for a writ of habeas corpus on twelve grounds. He asserts that: 1) the trial court gave the jury a "burden-shifting" instruction that violated his constitutional rights; 2) the trial court gave the jury an improper "malice" instruction that violated his constitutional rights; 3) the habeas court abused its discretion in finding that petitioner was properly indicted; 4) the habeas court abused its discretion in denying habeas relief on the basis that he was improperly indicted; 5) the habeas court abused its discretion in denying habeas relief on the ground that the State committed a *Brady v. Maryland*, 373 U.S. 83 (1963) violation affecting his criminal trial; 6) the habeas court erred in denying relief on his claims that errors in the serology report created during the criminal investigation violated his constitutional rights; 7) he was prejudiced by ineffective assistance of trial counsel; 8) the habeas court abused its discretion in contacting the State for submission of proposed findings of fact and conclusions of law, and in subsequently adopting the same findings of fact and conclusions of law; 9) the habeas court erred in determining

1

that he could have been sentenced as a principal offender in two murder counts; 10) the habeas court failed to consider newly-discovered evidence in the form of an affidavit from his deceased half-brother; 11) the trial court erred in allowing the State to ask racially-charged questions during the omnibus hearing; and 12) his trial was so tainted cumulative error that his constitutional rights were violated. In reviewing these challenges, "we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, in part, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

When tried in 1991 for the murder of Ms. Bennett, Mr. Gray testified that his half-brother, Karl Finney, beat Ms. Bennett and stabbed another victim, Christopher Dillard, after Mr. Gray and Mr. Dillard physically fought over Mr. Dillard's request to sell crack cocaine from Mr. Gray's home. According to Mr. Gray, after Mr. Finney attacked Mr. Dillard and Ms. Bennett, Mr. Gray placed a coat on Ms. Bennett and walked her to his van, then bound and carried Mr. Dillard to the van.[1] Mr. Gray's intent, he testified, was to take both victims to the hospital. He realized en route, however, that Mr. Dillard was likely dead, so he abandoned his plan to go to the hospital and instead took both victims to a remote location and "dropped" them.

When Ms. Bennett and Mr. Dillard were killed, several of Mr. Gray's family members were in the family home. Among them was Mr. Gray's thirteen-year-old nephew, who testified that he saw Mr. Gray fight Mr. Dillard. The nephew testified that Mr. Gray instructed him to get a sock to stuff into Ms. Bennett's mouth and instructed his younger sister (Mr. Gray's niece) to get a wire, presumably to be used in restraining the dying Mr. Dillard. The nephew accompanied Mr. Gray to dispose of the bodies after Mr. Finney handed the nephew a hammer and told him to hit Mr. Dillard if Mr. Dillard moved. The nephew testified that Ms. Bennett cried while being transported in the van, and that after Mr. Gray removed her from the van and took her out of sight, the nephew heard Ms. Bennett scream. Ms. Bennett's and Mr. Dillard's bodies were found where Mr. Gray left them. Ms. Bennett had been stabbed more than fifty times.

No error assigned by Mr. Gray in this appeal addresses the admission of Mr. Gray's, the nephew's, or other witness testimony.

In this appeal of the denial of his petition for a writ of habeas corpus, Mr. Gray asks us to grant relief on the basis that his constitutional rights were disregarded through numerous errors. "Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt." Syl. Pt. 5, *State v. Blair*, 158 W. Va. 647, 214 S.E.2d 330 (1975). Presented with the detailed and uncontroverted testimony summarized above, we find that only the most extraordinary error would have prejudicially clouded Mr. Gray's conviction. No errors asserted by Mr. Gray—singularly or cumulatively—rise to the extraordinary level necessary to germinate a seed of doubt.

---

[1]Mr. Gray was convicted of Ms. Bennett's murder and Mr. Finney was convicted of Mr. Dillard's murder in separate trials.

Superficially, Mr. Gray raises valid concerns. With respect to the challenged jury instructions (the first and second assignments of error), for example, the circuit court found early in its proceedings that the first was unconstitutional but harmless beyond a reasonable doubt, and it deemed the second waived because Mr. Gray failed to raise the question of its error together with questions about the first. But it is apparent that neither instruction affected the outcome of Mr. Gray's trial.[2] Similarly, the circumstances of Mr. Gray's indictment (the third, fourth, and fifth assignments of error) present oddities, inasmuch as it was long believed that an equipment malfunction prevented transcription. However, as the circuit court adequately explained, there is no apparent error in the manner of the indictment and there is thus no *Brady* violation for the State's failure to produce the transcript. Likewise, though Mr. Gray's blood type was misidentified in the State's serology report (the sixth assignment of error), the serology report was not introduced into evidence and was not the basis for any testimonial evidence other than a state trooper's statement that blood found in petitioner's van was consistent with either Mr. Gray's or Mr. Dillard's blood type. Mr. Gray's own testimony establishes that it is very likely that Mr. Dillard bled in the van during transport.

Mr. Gray's counsel may have made questionable strategic decisions (the seventh assignment of error), such as failing to interview Mr. Gray's mother, who was in the home at the time of the murders but may or may not have been capable of communication after suffering a stroke, and failing to interview witnesses who were near the remote area where Ms. Bennett's and Mr. Dillard's bodies were found. We have explained that

> "[t]he fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel

---

[2]Petitioner filed his petition for habeas corpus in 1998, and an amended petition by counsel in 2004. The circuit court conducted a hearing in 2004, to consider the constitutionality of the trial court's instruction on intent, which petitioner asserted shifted the burden of proof to him. In an order entered in October of 2004, the circuit court wrote that "the parties agreed to bifurcate this matter to let this [c]ourt resolve the issue on an instructional error" and noted that the State conceded that an erroneous, burden-shifting instruction was given. The court found, however, that because petitioner invited the error by proposing the instruction and based on evidence like that summarized in the body of this decision, the instruction had no bearing on the outcome of the trial. Petitioner appealed and this Court declined to docket the appeal because it challenged an interlocutory order. Then, while his first petition for habeas corpus was pending, petitioner filed a second petition for habeas corpus that was consolidated with the first. While the consolidated petitions were pending, in 2008, he filed an additional petition for a writ of habeas corpus, and he also amended his first-filed petition. Then, in 2015, he filed a motion for summary judgment concerning the burden-shifting instruction, which was already addressed by the circuit court, and the malice instruction, which petitioner argues was delivered in such a way that the jury could presume petitioner's malice toward Ms. Bennett. We agree with the circuit court that the circuit court's October 2004, order addressed all challenges to the court's instructions, that the particular wording of the first instruction did not prejudice petitioner, and that petitioner failed to address specific error in the second instruction when seeking relief from the circuit court.

3

must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation." Syllabus point 3, *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995).

Syl. Pt. 5, *State ex rel. Vernatter v. Warden, W. Virginia Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999). In this case, Mr. Gray has proffered no fact that his trial counsel might have discovered that would have countered Mr. Gray's own testimony about the circumstances surrounding Ms. Bennett's murder. Furthermore, it is apparent from the trial court's conversation with Mr. Gray (prior to his testimony) that Mr. Gray was fully informed regarding his rights, and he willingly and knowingly chose to testify. He has not alleged that counsel erred in advising him about that decision. For these reasons, we find that "there is [no] reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

Several of the assignments of error asserted by Mr. Gray address the conduct of the habeas court that had no bearing on his criminal conviction. Mr. Gray was not prejudiced by the trial court's acceptance of the State's proposed findings of fact and conclusions of law after the omnibus hearing conducted in this proceeding, even if filed after the court's deadline (the eighth assignment of error). He likewise was not prejudiced by the circuit court's statement that he could have faced criminal prosecution and conviction for his part in Mr. Dillard's death (the ninth assignment of error). Finally, Mr. Gray argues that the omnibus proceeding was permeated with racially-charged language (the eleventh assignment of error), but our review of the record reveals no improper epithets, and any questions concerning race were asked in relation to Mr. Gray's argument that his counsel did not consider the racial makeup of juries in Kanawha County.

Curiously, Mr. Gray produced an affidavit executed by Mr. Finney, which Mr. Gray claims to have found in Mr. Finney's belongings after his death, wherein Mr. Finney claims responsibility for both victims' murders. Mr. Gray asserts that the habeas court erred in disregarding this "newly-discovered evidence" (the tenth assignment of error). Though the affidavit conclusively states that Mr. Finney had retrieved repressed memories from the night of the murders and is "now positive that [Mr. Gray] did not stab" the victims, the factual events described in the affidavit substantially reflect the details to which Mr. Gray testified: Mr. Gray and Mr. Dillard fought; Mr. Finney stabbed Mr. Dillard, and attacked Ms. Bennett; Mr. Gray took both victims to the van while Ms. Bennett, at least, was walking and "moaning[;]" and Mr. Gray drove away with his nephew and both victims in the van, then returned to the home with only the nephew. In this respect, the affidavit presents no new and material evidence and, for the reasons already discussed, would not present an opposite result in a second trial on the merits. *See* Syl., *State v. Frazier*, 162 W. Va. 935, 253 S.E.2d 534 (1979). The affidavit, therefore, does not fall within the parameters we have defined for newly-discovered evidence.

For all the reasons described above, we find that the evidence offered at trial was so unassailable that the cumulative effect (the twelfth assignment of error) of any of the minor errors described herein was harmless beyond a reasonable doubt. Mr. Gray was convicted on the basis of his own testimony wherein he described leaving home with one, and possibly two, living victims—

one of whom he had bound while the victim bled to death—and "dropping" them in a hidden location. Ms. Bennett was able to walk to the van when leaving Mr. Gray's home, though when her body was found, she had been stabbed more than fifty times. Mr. Gray's nephew's testimony leaves no doubt that Ms. Bennett was alive when Mr. Gray took her from the van after transporting her from the family home, and that the last thing heard from Ms. Bennett was a scream. No combination of corrections to any of the errors asserted above could have presented this damning testimony in a light more favorable to Mr. Gray.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton

**DISQUALIFIED:**

Justice Tim Armstead