**FILED**
**September 15, 2023**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 22-0015** (Hardy County 20-F-47)

**Donna L. Wilfong,**
**Defendant Below, Petitioner**


# MEMORANDUM DECISION


Petitioner Donna L. Wilfong appeals two orders of the Circuit Court of Hardy County. The first, entered on December 9, 2021, sentenced her to a term of imprisonment for a determinate period of ten years after she was convicted in a jury trial of first-degree robbery in violation of West Virginia Code § 61-2-12(a). The second, entered on July 30, 2021, denied her motion for a new trial after she argued that newly discovered evidence warranted relief. Ms. Wilfong presents three assignments of error related to the court's orders. She argues that the circuit court erred in failing to suppress several witnesses' identification of her, admitting a report of her cellular phone activity, and denying her motion for a new trial. Upon review, we determine that oral argument is unnecessary and that a memorandum decision addressing these assignments of error is appropriate. *See* W. Va. R. App. P. 21.[1]

I.

Ms. Wilfong was indicted in October of 2020 on one count of first-degree robbery and one count of conspiracy for events surrounding the robbery of a pharmacy in Hardy County.[2] Prior to her trial, Ms. Wilfong filed a motion to suppress evidence that at least four separate individuals identified her as the person who committed the robbery. She argued that witnesses identified her through the investigating officers' use of a single "showup" photo that is prohibited under West

---

[1] Ms. Wilfong appears by counsel Ramon Rozas III. Respondent State of West Virginia appears by Attorney General Patrick Morrisey and Assistant Attorney General Lara K. Bissett.

[2] The parties have not described the robbery or included evidence in the appendix record on appeal detailing the events of the robbery. Ms. Wilfong has not disputed that the evidence admitted by the circuit court supports her criminal conviction. We, therefore, consider only the circuit court's admission of the evidence described in Ms. Wilfong's assignments of error, and not the sufficiency of the evidence itself.

Virginia Code § 62-1E-2(j).[3] At a pretrial hearing, the State agreed that it would not introduce evidence of two of the identifications that Ms. Wilfong challenged. The circuit court later denied the motion to suppress evidence of the remaining two identifications. Those identifications were made by Ms. Wilfong's cousin, Felicia Waybright, and Bryan Wilson. On appeal, Ms. Wilfong challenges the identifications described in the trial testimony of Ms. Waybright, Mr. Wilson, and Brandin Carr, whom the State initially charged as Ms. Wilfong's codefendant.[4] The State dismissed the charges against Mr. Carr.

Ms. Wilfong filed an additional pretrial motion seeking to exclude the testimony of David Maher, a computer science engineer whom the State designated as an expert witness approximately three weeks prior to trial, on the ground that the disclosure was late. Mr. Maher, according to the State's disclosure, would testify about his analysis of Ms. Wilfong's cellular phone. The circuit court granted Ms. Wilfong's motion, but ultimately allowed the State to offer Mr. Maher as a fact witness "with respect to what he did to run the [C]ellebrite [phone analysis] program software, as to how he download[ed] the content of the cellular telephone; and, as to any reports generated by the [C]ellebrite software. . . ." The circuit court specified that any testimony by Mr. Maher "which would involve expert testimony would not be permitted. . . ."

Ms. Wilfong challenges each of the circuit court's pretrial orders described above. She also argues that the circuit court erred in denying her motion for a new trial after she presented the court with "newly discovered evidence" about the reliability of the Cellebrite program described in Mr. Maher's testimony.

II.

We begin with Ms. Wilfong's first assignment of error, in which she argues that the circuit court erred in denying her motion to suppress her identification as described in the trial testimony of Ms. Waybright, Mr. Wilson, and Mr. Carr. When we review the denial of a motion to suppress, we "construe all facts in the light most favorable to the State" and review the circuit court's factual findings for clear error. Syl. Pt. 1, in part, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). "[A] circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made." *Id*. at 107, 468 S.E.2d at 722, Syl. Pt. 2, in part.

---

[3] That code section provides that "[s]howups should only be performed using a live suspect and only in exigent circumstances that require the immediate display of a suspect to an eyewitness. A law-enforcement official shall not conduct a showup with a single photo; rather a photo lineup must be used."

[4] Ms. Wilfong's motion sought to suppress evidence of identifications by individuals "including but not limited to" Ms. Waybright, Mr. Wilson, and the two individuals the State agreed not to offer.

2

The facts concerning Ms. Wilfong's identification are not in dispute. During the suppression hearing, Detective Steven Reckart of the Moorefield Police Department testified that he, while investigating the crime, used surveillance camera footage (provided by pharmacy employees) to create a still photo of the then-unidentified offender. When the detective received a tip stating that Ms. Waybright and Mr. Carr had robbed the pharmacy, he met with Ms. Waybright. During that meeting, Detective Reckart showed Ms. Waybright the still photo and asked, "Does [Mr. Carr] wear this type of clothing?" Ms. Waybright responded, "That is Donna Wilfong." Similarly, Detective Reckart was contacted by a probation officer in another county, and that officer told the detective that he believed that Mr. Wilson could provide information about the robbery. Detective Reckart met with Mr. Wilson and showed him the same still photograph, which prompted Mr. Wilson to say, "That's Donna Wilfong." Mr. Carr's identification was not mentioned during the suppression hearing. However, the State presented him as a witness at Ms. Wilfong's trial and showed the video surveillance recording of the pharmacy robbery. When asked if Ms. Wilfong was the person appearing in the video, Mr. Carr testified, "Without a doubt, I . . . believe so."

A "'showup' means an identification procedure in which an eyewitness is presented with a single suspect for the purpose of determining whether the eyewitness identifies this person as the perpetrator." W. Va. Code § 62-1E-1(12). A "'suspect' means the person believed by law enforcement to be the possible perpetrator of the crime." West Virginia Code § 62-1E-1(2). In view of these definitions, it is apparent that Detective Reckart did not violate West Virginia Code section 62-1E-2(j). When Detective Reckart showed the still photo to Ms. Waybright and Mr. Wilson—individuals who were not eyewitnesses to the crime—he had not identified a potential named perpetrator and, therefore, did not show Ms. Waybright or Mr. Wilson a photo of a suspect. Rather, he showed them an image capturing the moment that a crime was perpetrated in his attempt to discover the identity of the person the image showed. At this point in Detective Reckart's investigation, the image he showed was of the perpetrator, for the purpose of naming a suspect. We find that Detective Reckart did not use an improper showup, and the circuit court did not err in denying the motion to suppress.

III.

In her second assignment of error, Ms. Wilfong argues that the circuit court erred in allowing Mr. Maher, a lay witness, to offer testimony about his use of the Cellebrite program, used by law enforcement officers to extract data from personal devices.[5] "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

Ms. Wilfong points to Mr. Maher's pretrial hearing testimony wherein he stated that he was trained to use Cellebrite, and then paraphrases Mr. Maher's testimony to suggest that Mr. Maher testified that a "lay person would not be able to use or understand the device and software."

---

[5] It is not apparent how law enforcement officers obtained Ms. Wilfong's phone or what they gleaned from it. Limited portions of the trial transcript were provided in the appendix record on appeal.

On this basis, Ms. Wilfong argues that Mr. Maher should not have been permitted to testify because he was not qualified as an expert. However, Mr. Maher also testified at the pretrial hearing that it is not necessary to "have an expert level of certification" to operate the Cellebrite program, and that "officers out of the academy can be trained to use [it] with no technical abilities." He described the program as "very user-friendly software" that guides a user through the necessary steps after a phone is plugged into and detected by the computer running the software. Mr. Maher testified that he did not need to analyze data obtained from phone, and his report was "merely a summary" of the report generated by the Cellebrite program. Upon hearing this pretrial hearing testimony, the circuit court ruled that

> the State could elicit testimony from Mr. Maher to the extent of what he did in basically running a program, hooking it up, letting the data download, observing things on the—from the download or from the phone that he looked at later and reading certain things from a report that was generated by that software.

> Anything beyond that, I will sustain an objection. . . .

The circuit court made the critical distinction that Mr. Maher would be permitted to testify about "what he did" and the court emphasized that the State could not exceed the parameters of asking about Mr. Maher's actions. This limitation comports with Rule 602 of the West Virginia Rules of Evidence, which permits lay witness testimony "if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." There is nothing before us to suggest that the court intended to permit Mr. Maher to testify using "scientific, technical, or other specialized knowledge" that would require the court to apply rules for testimony by expert witnesses. *See* W. Va. R. Evid. 702. Moreover, there is no evidence that Mr. Maher exceeded the limitations set by the circuit court. Ms. Wilfong has not included any portion of the transcript of Mr. Maher's trial testimony, nor has she averred that his testimony required him to call upon scientific, technical, or other specialized knowledge. For these reasons, we find no evidence that the circuit court abused its discretion in allowing Mr. Maher to testify, and we find no error.

IV.

Ms. Wilfong filed a motion for a new trial on April 26, 2021. Her explanation was brief: She wrote that "since the trial, severe defects have been uncovered in the Cellebrite devices." In support, she attached a "[r]eport by Signal Technologies" and argued that "internal security on Celebrite devices is so poor that any device that is examined may in turn corrupt the Cellebrite device and affect all past and future reports." The "report" that Ms. Wilfong attached to her motion is an Internet blog entry of unapparent origin.[6] The circuit court scheduled a hearing on the motion, but Ms. Wilfong offered no additional evidence. Her counsel represented to the circuit court that "the researcher discovered [the security defect in Cellebrite] and published his findings" just five

---

[6] The document that Ms. Wilfong attached does not appear to be self-authenticating within the meaning of Rule 902 of the West Virginia Rules of Evidence, and it is not clear how she proposes to present her evidence if granted a new trial.

4

days before he filed the motion for a new trial. After the hearing, the circuit court denied Ms. Wilfong's motion for a new trial.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

We have described the grounds for a new trial based upon newly discovered evidence:

> A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.

Syl., *State v. Frazier*, 162 W. Va. 935, 253 S.E.2d 534 (1979) (citations omitted). We explained in *Frazier* that, generally, all five elements must be satisfied before a petitioner's motion for a new trial may be granted on the ground that evidence is newly discovered. *Id*. at 941, 253 S.E.2d at 537. Failure to satisfy any single element is fatal to a petitioner's request for relief. Ms. Wilfong has failed to satisfy at least two *Frazier* requirements. It should be apparent that, where *Frazier* requires the submission of an affidavit detailing the evidence and the manner in which it was discovered, a printed Internet blog post presented without explanation will not suffice. Furthermore, there is no indication that any information in the article is material to the case before us. We find that the printed material is not newly discovered evidence and the circuit court did not err in denying Ms. Wilfong's motion for a new trial on that ground.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 15, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn