# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 16-0475** (Harrison County 15-F-138-3)

**John Lee Perrine, II,**
**Defendant Below, Petitioner**

**FILED**

**April 28, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner John Lee Perrine, II, by counsel Rocco E. Mazzei, appeals his conviction of three counts of first-degree sexual abuse following a jury trial. The Circuit Court of Harrison County denied petitioner's two motions for a new trial on April 13, 2016, and entered his sentencing order on April 18, 2016. The State of West Virginia, by counsel Zachary Aaron Viglianco, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

At approximately 6:50 p.m. on the evening of February 2, 2014, petitioner and a friend entered a fast food restaurant in Harrison County. Petitioner ordered food at the counter. While the food was being prepared, petitioner conversed with the female cashier. Eight to ten minutes after petitioner arrived, the cashier indicated she needed to retrieve cups from a storage shed located behind the restaurant. As she was walking out of the restaurant to retrieve the cups, petitioner asked the cashier, "Do you need help with that?" The cashier replied that she did not need assistance and then exited the restaurant.

When the cashier arrived at the shed, she struggled with the door and could not find a working light inside. She nevertheless went inside and attempted to locate the cups. At that point, she heard a man's voice say, "Hey, do you need help?" The cashier turned toward the open door, saw petitioner, and said, "No, I have this." Despite the cashier's reply, petitioner entered the shed and then pinned the cashier against a shelf; groped her crotch, buttocks, and breasts over her clothing; and kissed her neck. However, the cashier managed to push petitioner off her when he attempted to undo the zipper on his pants. She ran out of the shed and to the restaurant where she pounded on the locked back door. A coworker heard the cashier and opened the door. The cashier entered the restaurant and when she saw petitioner's friend, who was still in the restaurant, she said, "[this man's] friend tried to rape me." At that point, petitioner's friend, who

1

had petitioner's food on a tray, asked for a to-go bag and left the restaurant. Thereafter, the police were called.

Petitioner was indicted on three counts of first-degree sexual abuse for the attack on the cashier. Petitioner's two-day trial commenced on December 7, 2015. During the State's case-in-chief, the State entered surveillance footage from the restaurant's security cameras taken on the night of the crime. The footage showed that petitioner engaged in conversation with the cashier, that petitioner watched the cashier leave the store, and that he followed the cashier outside shortly thereafter. The State also entered testimony from petitioner's friend, by way of impeachment, that he (the friend) told the police that petitioner admitted he "grabbed the butt of [the cashier]." The State also called the cashier who testified that petitioner was the person who had assaulted her in the shed. On cross-examination, petitioner's counsel asked the cashier the following question: "Now . . . [more than a year before the crime at issue in this case], you were using the powerful drug Prozac?" The State objected. At the ensuing bench conference, the circuit court ruled that defense counsel had to limit his questions to the drugs the cashier was taking at the time of the crime. Accordingly, defense counsel questioned the cashier as follows:

DEFENSE COUNSEL: On February 2, 2014, this is the date of these allegations, what prescription medications were you on?

THE CASHIER: None.

DEFENSE COUNSEL: Okay. And during that time, were you addicted to any drugs?

THE CASHIER: I've been clean for eleven years, so no.

DEFENSE COUNSEL: Eleven years?

THE CASHIER: Yes.

Thereafter, petitioner attempted to cross-examine the victim regarding her prior attendance at Narcotics Anonymous ("NA") meetings; however, the circuit court sustained the State's objection to this question.

During his case-in-chief, petitioner admitted that he was in the restaurant on the evening of February 2, 2014, and that he spoke with the cashier; however, he asserted that he had not assaulted her. Petitioner also admitted to leaving the restaurant before he got his food, but claimed he did so to alleviate his back pain and to start the heater in his truck. The jury found petitioner guilty on all three counts.

Post-trial, petitioner filed a motion for a new trial in which he claimed that the trial court violated his constitutional right to cross-examine a witness against him. Thereafter, petitioner filed a second motion for a new trial based on "newly-discovered evidence." Following a hearing, the circuit court denied both motions by order entered April 13, 2016. On April 18, 2016, the circuit court sentenced petitioner to not less than one, nor more than five years in

prison for each of the three counts of first-degree sexual assault, to run concurrently. Petitioner now appeals.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

Petitioner raises four assignments of error on appeal. Petitioner first argues that the circuit court violated his constitutional right to effective cross-examination when it refused to allow him to cross-examine the cashier about her prior use of the anti-depressant drug Prozac. Petitioner avers that the answer to that question went to the cashier's credibility and her ability to recall a "significant issue" in this case.

"Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Accordingly, the topics explored on cross-examination at petitioner's trial were required to be relevant pursuant to Rule 401 of the West Virginia Rules of Evidence. That rule provides that, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Here, the exploration of the cashier's use of an antidepressant more than a year before the crime at issue in this case was not relevant because it did not bear on the cashier's behavior at the time of the crime or her ability to remember the events that occurred on that date. Thus, because that evidence did not satisfy either prong of Rule 401, the circuit court acted within its discretion in limiting defense counsel's cross-examination of the cashier with regard to her past use of Prozac. Hence, we find no violation of petitioner's right to confront this witness and, therefore, find no error.

Petitioner's second argument mirrors his first—that the circuit court erred in denying his right to cross-examine the cashier regarding her attendance at NA meetings, more than a year before the crime. In that regard, the circuit court found that petitioner was not denied his right to meaningfully cross-examine the victim because,

> [it could] conceive of no reason why the victim's participation in NA meetings ha[d] a bearing on her credibility. Defense counsel was permitted to question the victim about her recent felony conviction and history of drug abuse, because these matters clearly weigh[ed] on her credibility. However, continued pursuit of treatment for her substance abuse problems ha[d] no bearing on her credibility, and thus, this line of questioning was disallowed.

3

We concur with the circuit court's reasoning and, therefore, find no violation of petitioner's right to confront the witness.

Petitioner's third assignment of error is that the trial court erred in denying his motion for a new trial based on newly-discovered evidence. That "new" evidence was the following averment found in the cashier's complaint in her civil lawsuit against the restaurant regarding petitioner's assault:

> After [petitioner] ordered his food, *he began to make sexual advances and innuendos toward her. . . .* [Petitioner's] conduct toward [her] was unwelcome and *she immediately reported to [her manager] that [petitioner] was making sexual advances towards her* and that she was concerned and uncomfortable with the situation.

(Emphasis added.)

Petitioner argues the cashier's claim that "he began to make sexual advances and innuendos" toward her is wholly contrary to the cashier's testimony at trial, in which (1) she described her conversation with petitioner as "just chatting you up" and "just like a normal customer," and (2) she agreed that she had had "[a] fairly lengthy period of time [during] which you're engaging in kind of friendly conversation with [petitioner]." Petitioner alleges that the variance between the cashier's trial testimony and the averment in her civil complaint go directly to her credibility and the materiality of the alleged events on the night of the crime, and demonstrate a substantial basis for a new trial.

> A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.

Syl., *State v. Frazier*, 162 W.Va. 935, 253 S.E.2d 534 (1979).

Petitioner claims he satisfies the first four *Frazier* elements because the "new" evidence (1) was discovered post-trial; (2) could not have been discovered before the verdict; (3) was new and material; and (4) would produce an opposite result at a new trial because the cashier, who was petitioner's lone accuser, changed her story. As for the fifth element of *Frazier*, petitioner tacitly admits that he does not satisfy it because he clearly stated he would use the new evidence "to discredit or impeach" the cashier at a new trial. However, petitioner claims that the Court

4

created an exception to the fifth element of *Frazier* and allowed a new trial when "the witness whose testimony is impeached by the newly-discovered impeachment evidence is the principle or sole witness for the government without whose testimony there would be no conviction." *State v. Stewart*, 161 W.Va. 127, 138, 239 S.E.2d 777, 784 (1977). Petitioner avers that the *Stewart* exception to fifth element of *Frazier* applies here because the State's case rested solely on the cashier's uncorroborated testimony.

The trial record contradicts petitioner's claim that the evidence is "new." During the State's direct examination of the cashier at trial, the State asked about the type of conversation she had with petitioner while he ordered his food. The cashier gave the following response:

> We had a good bit of conversation because I was at the front counter . . . he was telling me he was from Buckhannon; and he told me he had two children; and he told me that him and his friend was just in town *trying to find some trouble*. And *he asked if I was married*, and I say yes. And then me and [a coworker] were just . . . we were standing there talking and I said . . . "Well, you don't need to take that from your boyfriend" . . . and he looked at me and *said, "Well, we'd be the perfect couple*." And I said, "I don't think so, and I don't agree that my husband would think so either."

(Emphasis added.) These statements clearly indicate that petitioner engaged the cashier in conversation that could reasonably be described as "sexual advances and innuendo." Accordingly, petitioner's newly-discovered evidence claim fails on this score given that the evidence was not new and, therefore, could have been explored at trial.

Petitioner also claims that the cashier's averment in her civil complaint, that "she immediately reported to [her manager] that [petitioner] was making sexual advances toward[] her[,]" is newly-discovered evidence justifying a new trial. We disagree. It is wholly irrelevant when the cashier told her manager about her conversation with petitioner because, pursuant to Rule 401, that issue does not tend to make any pertinent fact at petitioner's trial more or less probable than it would be without the evidence, and it is not a fact of consequence in determining the action. Nor does that issue directly weigh on the cashier's credibility, since she had no reason to volunteer information she was not asked about on direct or cross-examination. This Court's longstanding precedent provides that, to be entitled to a new trial, the evidence must "be new and material." Syl. Pt. 1, in part, *Halstead v. Horton*, 38 W.Va. 727, 18 S.E. 953 (1894). Petitioner's evidence is neither new, nor material

That said, even if we assume that the evidence was, in fact, new, petitioner is not entitled to a new trial because he cannot satisfy element (5) of *Frazier* given that he admits in his brief to the Court that the value of the newly-discovered evidence is to impeach the cashier at a new trial. Thus, petitioner's request for a new trial must be denied, unless the *Stewart* exception applies. Therefore, pursuant to *Stewart*, the question becomes whether the State's case rested solely on the cashier's testimony.

Although the cashier was clearly the State's most important witness at trial, the case against petitioner did not rest entirely on her testimony. The State also entered surveillance tapes

from the night of the crime that showed petitioner in the restaurant, talking with the cashier, and then following her out of the restaurant soon after she exited to find the cups. Additionally, the State put on evidence from petitioner's friend, by way of impeachment, that petitioner admitted he "grabbed the butt of [the cashier]."

> Circumstantial evidence and direct evidence inherently possess the same probative value. . . . Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt. Nothing more should be required of a factfinder.

State v. Guthrie, 194 W.Va. 657, 669, 461 S.E.2d 163, 175 (1995) (quoting State v. Jenks, 574 N.E.2d 492, 502 (Ohio 1991)). Therefore, because the State's case was not predicated solely on the cashier's testimony, the Stewart exception does not apply. Consequently, because petitioner cannot satisfy the fifth element of Frazier, the circuit court did not err in denying petitioner's motion for a new trial based on "newly-discovered evidence."

Petitioner's fourth and final assignment of error is that he was denied a fair trial due to an improper remark made by the State to the cashier at trial. Specifically, at the opening of the State's redirect examination of the cashier, the State, in the presence of the jury said, "Welcome back" to the cashier. Petitioner's counsel objected and, during the ensuing sidebar, said to the court, "[W]elcome back, your Honor? That's improper. As if – as if I was in fairyland or something during my cross-examination." While still in the sidebar, the circuit court told the prosecutor, "[Y]ou need to watch it." The court then instructed the jury "to disregard the [State's] comment to the witness . . . ."

Petitioner argues that in light of State v. Sugg, 193 W.Va. 388, 393, 456 S.E.2d 469, 474 (1995), his conviction must be reversed because the State's comment prejudiced the jury against petitioner. Syllabus Point 6 of Sugg provides as follows:

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

The State's isolated and innocuous comment did not have sufficient impact on the proceedings to merit a finding of prosecutorial misconduct warranting relief. As the Sugg Court explained,

> [a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice. It is not enough that prosecutorial remarks

are "undesirable or even universally condemned." The test is whether the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." This Court has held that whether improper argument by the prosecution has so prejudiced the trial process as to require reversal must be gauged from the facts of each trial.

193 W.Va. at 405, 456 S.E.2d at 486 (citations omitted). Here, the State's two-word greeting during a two-day trial did not mislead the jury regarding any material fact or issue of law. Moreover, the State presented ample, competent proof at trial to establish petitioner's guilt. Finally, the comment did not divert the jury's attention to extraneous matters. Thus, the State's comment did not so infect the trial with unfairness as to make petitioner's conviction a denial of due process. Hence, we find that the circuit court did not abuse its discretion in denying relief on this ground.

Accordingly, for the foregoing reasons, we affirm petitioner's convictions.

Affirmed.

**ISSUED:** April 28, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker